WILLIAM TYREE, JR. *vs.* PATRICK KEANE & another.[1]

Middlesex. January 6, 1987. — May 14, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & NOLAN, JJ.

*Practice, Civil,* New trial, Presumptions and burden of proof. *District Attorney. State Police. Constitutional Law,* Search and seizure, Waiver of constitutional rights. *Waiver. Search and Seizure,* Consent, Presumptions and burden of proof. *Evidence,* Relevancy and materiality. *Civil Rights,* Damages, Search and seizure.

In an action asserting civil rights, trespass, and privacy claims against two
    State police officers arising from warrantless searches of the plaintiff's
    apartment, the judge did not abuse his discretion in denying the plaintiff's
    motion for a new trial as to one of the defendants on the ground that
    the verdict was against the weight of the evidence. [4-5]
At the trial of a Federal civil rights claim against a State police officer
    arising from his participation in warrantless searches of the plaintiff's
    apartment shortly after the plaintiff's wife had been murdered there, the
    judge erred in excluding evidence of the defendant's reliance on provi-
    sions of G. L. c. 38, § 6, and regulations of the State police, as relevant
    to the issue whether it was reasonable in the circumstances for the
    defendant to believe that his conduct would not violate the plaintiff's
    rights, for the purpose of determining the applicability of the qualified
    immunity principle recognized in decisions of the United States Supreme
    Court. [5-6]
At the trial of civil rights claims against State police officers arising from
    warrantless searches of the plaintiff's apartment, the plaintiff did not

---

[1] Roderick Hendrigan.

have the burden of proving that he had not consented to the searches, and the judge correctly instructed the jury that the defendants had the burden of proof on their contention that the searches were consensual. [7-8]

At the trial of civil rights claims against a State police officer arising from his participation in warrantless searches of the plaintiff's apartment shortly after the plaintiff's wife had been murdered there, the defendant, who claimed that the searches had been consensual, failed to lay an evidentiary foundation sufficient to entitle him to the admission of proffered testimony to the effect that the plaintiff had cooperated with the police by answering their questions and by volunteering information to them. [8]

At the trial of civil rights and other claims against a State police officer arising from his participation in warrantless searches of the plaintiff's apartment shortly after the plaintiff's wife had been murdered there, the judge properly excluded evidence that the plaintiff, at his prior criminal trial for his wife's murder, had not moved to suppress the evidence seized during the allegedly unconstitutional searches. [9]

An award of damages on a Federal civil rights claim was set aside where the plaintiff presented no evidence of out-of-pocket expenses, emotional distress, or any other actual injury suffered by him as a result of an allegedly unconstitutional search of his apartment by State police. [9-11]

CIVIL ACTION commenced in the Superior Court Department on January 29, 1982.

The case was tried before *Mel L. Greenberg, J.*

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Richard L. Zisson* for the defendants.

*Damon Scarano* for the plaintiff.

HENNESSEY, C.J. The plaintiff, William Tyree, Jr., brought this action against the defendants, Patrick Keane and Roderick Hendrigan, in which he claimed that, following the murder of his wife, Elaine Tyree, the defendants violated his Federal and State civil rights by searching his apartment.[2] 42 U.S.C. § 1983 (1976 ed.). G. L. c. 12, § 11I (1984 ed.). The complaint also alleged conversion, invasion of privacy, and trespass. Following a trial in Superior Court, the jury returned verdicts

---

[2] At the time of this action, the plaintiff had been convicted of murder in the first degree in the death of his wife. This court affirmed that conviction in *Commonwealth* v. *Tyree,* 387 Mass. 191 (1982), cert. denied, 459 U.S. 1175 (1983).

against Keane regarding the Federal civil rights, invasion of privacy, and trespass claims. The jury assessed damages in the amount of $2,500 against Keane on the Federal civil rights claim and nominal damages of $1 for the invasion of privacy and trespass claims. The jury returned a verdict in favor of Keane regarding the State civil rights claim and the conversion claim, and in favor of Hendrigan on all claims. Motions for a new trial by the plaintiff and Keane were denied. Both parties appealed and we transferred the case to this court on our own motion. We affirm the judgments with respect to Hendrigan and the judgments for nominal damages against Keane on the invasion of privacy and trespass claims, and further conclude that, with respect to the alleged violation of the plaintiff's Federal civil rights, Keane is entitled to a new trial or, at his option, the entry of a judgment for the plaintiff in the amount of $1.

The testimony at the trial disclosed the following facts. At approximately 12 noon on January 30, 1979, the Ayer police department received a telephone call in which the caller stated that a woman's screams were heard emanating from an apartment at 104½ Washington Street. William Adamson, the police chief of Ayer, went to the apartment and with the aid of the landlord entered the apartment where he found the body of Elaine Tyree. Adamson notified the district attorney's office for the Northern District, which dispatched State police Trooper Hendrigan to the scene. When Hendrigan arrived, he secured the murder scene to ensure that nothing was touched until the medical examiner arrived. Approximately one-half hour after Hendrigan's arrival, State Police Detective Lieutenant Jack Dwyer, head of homicide investigations for the district attorney's office, arrived. While investigating the crime scene, Hendrigan took a military identification card from the victim's body. Dwyer, Adamson, and Hendrigan left the Tyree apartment between 3 and 3:30 P.M. They then met the plaintiff at the Ayer police station, where he agreed to speak with the police after waiving his Miranda rights and acquiesced to a search of his truck and to a benzidine test of his clothes.

That evening Dwyer telephoned State police Trooper Keane, informed him of the Tyree homicide, and requested his assistance with the investigation. On the morning of January 31, Keane accompanied Dwyer and Adamson to the apartment to view the scene. The visit lasted approximately thirty minutes to one hour. Later that evening, Keane, Hendrigan, Dwyer, Adamson, and another trooper went with the plaintiff to the apartment to obtain a dress to bring to the funeral home. Before entering the apartment, Hendrigan asked the plaintiff if the officers could accompany him inside. He indicated that they could and the officers "look[ed] around" for approximately thirty minutes. While in the apartment, Hendrigan took a New York traffic ticket that he found on a table in the apartment.

On February 1, Keane returned to the apartment with Adamson and Dwyer and took two letters which he found in a coffee can above the refrigerator in a cabinet. The police officers remained in the apartment for approximately one hour. The police retained a key to the Tyree apartment until February 21. No search warrant was obtained at any time during this period. Testimony indicated that other visits were also made during this period by police officers.

1. We first address the plaintiff's arguments with respect to the defendant Hendrigan. Although it is not entirely clear in the plaintiff's brief, we infer that the plaintiff's arguments as to Hendrigan are relevant to the claimed error in the judge's denial of the plaintiff's motion for a new trial on the ground that the verdict for the defendant was against the weight of the evidence.[3] We have stated that a "trial judge may set aside a verdict as against the weight of the evidence 'only if he is satisfied that the jury have failed to exercise an honest and reasonable judgment in accordance with the controlling principles of law.'" *Oldham* v. *Nerolich,* 389 Mass. 1005, 1006 (1983), quoting *Hartmann* v. *Boston Herald-Traveler Corp.,*

---

[3] The plaintiff also argues that newly discovered evidence should be considered in granting his motion for a new trial. The record does not indicate that this evidence was before the trial judge when he denied the plaintiff's motion. Consequently, we decline to address the plaintiff's contentions.

323 Mass. 56, 60 (1948). Furthermore, "[t]he granting or denying of a new trial on the ground that the verdict is against the weight of the evidence rests in the discretion of the judge." *Bergdoll* v. *Suprynowicz,* 359 Mass. 173, 175 (1971). We have reviewed the evidence relating to the claims against Hendrigan. There was no error.

2. We next address the appeal by the defendant Keane. As part of his defense, Keane relied on the qualified immunity that has been recognized under 42 U.S.C. § 1983 (1976). See *Malley* v. *Briggs,* 475 U.S. 335 (1986); *Davis* v. *Scherer,* 468 U.S. 183 (1984); *Harlow* v. *Fitzgerald,* 457 U.S. 800 (1982). Keane maintains that, because this qualified immunity is based on a standard of "objective reasonableness," see *Malley* v. *Briggs, supra* at 344; *Davis* v. *Scherer, supra* at 190-191; *Harlow* v. *Fitzgerald, supra* at 818, the trial judge erred when he refused to allow the defendants to introduce in evidence § 4.7 of the rules and regulations for the governing of the State police and declined to take judicial notice of G. L. c. 38, § 6, which at the time of the alleged unconstitutional search provided that "[t]he district attorney or his representative upon receipt of notification shall thereafter be in sole charge of the criminal investigation of the death."[4] The judge also refused to give to the jury a requested instruction regarding Keane's good faith reliance on these provisions. We

---

[4] General Laws c. 38, § 6, in effect on January 30, 1979, stated in relevant part: "The body shall not be moved, and the scene where the body is located shall not be disturbed until the district attorney or his representative either arrives at the scene or gives directions as to what shall be done at the scene and for the removal of the body. The district attorney or his representative upon receipt of notification shall thereafter be in sole charge of the criminal investigation of the death."

Section 4.7 of the rules and regulations for the governing of the State police, promulgated in 1974 pursuant to G. L. c. 22, § 9A, states: "At the scene of a homicide or other serious crime, the ranking Detective present shall assume immediate command and orders concerning the investigation will be given to him by no member of the Division except the Commissioner/Superintendent, or other ranking officers he is subordinate to within the chain-of-command of the Office of Investigation and Intelligence. The immediate area of the crime shall be cleared of all persons except those officials whose presence may be required by law, and officers who may be directed by the ranking Detective present to make the preliminary examination and investigation."

agree with the defendant that these rulings amount to reversible error.

The plaintiff maintains that his constitutional rights were violated when the defendant searched his apartment without obtaining a warrant. *Mincey* v. *Arizona,* 437 U.S. 385 (1978) (concluding that there is no homicide scene exception to the warrant requirement). Nevertheless, the defendant contends that, under G. L. c. 38, § 6, and § 4.7 of the State police rules and regulations, he was not in charge of the investigation and thus was not in a position to obtain a warrant if one were required. Consequently, he argues that it was not unreasonable for him to assume that his search of the apartment under the authority of Detective Lieutenant Dwyer did not involve a violation of the plaintiff's constitutional rights.

In *Harlow* v. *Fitzgerald, supra* at 815, the Supreme Court defined the objective reasonableness standard underlying the qualified immunity principle and stated that a claim for qualified immunity "would be defeated if an official '*knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff] . . .'" (quoting *Wood* v. *Strickland,* 420 U.S. 308, 322 [1975]). Furthermore, the Supreme Court has stated that "[i]t is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity." *Scheuer* v. *Rhodes,* 416 U.S. 232, 247-248 (1974). We conclude that Keane should have been allowed to present all the relevant evidence, including his reliance on G. L. c. 38, § 6, and regulation § 4.7. Certainly, evidence of both the statute and the State police regulation which placed the district attorney's office, and Detective Lieutenant Dwyer as its representative, in sole charge of the investigation was relevant to Keane's claim that his conduct was reasonable under the circumstances. The jury should have been allowed to consider the defendant's reliance on these statutory and regulatory provisions with regard to whether he reasonably should have known that his conduct would violate the constitutional rights of the plaintiff.

3. Because this case must now be remanded for a new trial, we consider several other arguments advanced by Keane which may arise at any new trial. Keane contends that the trial judge erred in instructing the jury that the defendants had the burden of proving that the plaintiff consented to the searches involved. He recognizes that in a criminal matter the prosecution has the burden of establishing consent when a defendant raises the constitutionality of a search through a motion to suppress. *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 222 (1973), citing *Bumper* v. *North Carolina,* 391 U.S. 543, 548 (1968). *Commonwealth* v. *Angivoni,* 383 Mass. 30, 33-34 (1981). *Commonwealth* v. *Cantalupo,* 380 Mass. 173, 176-177 (1980). Nevertheless, he argues that, in a civil matter, the plaintiff shoulders the burden of proving the essential elements of the case, one of which in an action under 42 U.S.C. § 1983 (1976) is "conduct [that] deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt* v. *Taylor,* 451 U.S. 527, 535 (1981). Because "a search conducted pursuant to a valid consent is constitutionally permissible" under the holding of *Schneckloth* v. *Bustamonte, supra,* Keane maintains that the plaintiff must prove the lack of consent in order to demonstrate a deprivation of his constitutional rights under the Fourth Amendment. We disagree.

The plaintiff does not bear the burden of proving the absence of consent in order to prevail in this instance. The Supreme Court has stated that "a search conducted without a warrant issued upon probable cause is '*per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions.' " *Schneckloth* v. *Bustamonte, supra* at 219, quoting *Katz* v. *United States,* 389 U.S. 347, 357 (1967). *Coolidge* v. *New Hampshire,* 403 U.S. 443, 454-455 (1971). *Chambers* v. *Maroney,* 399 U.S. 42, 51 (1970). Furthermore, where the search was conducted without a warrant, "the burden is on those seeking the exemption to show the need for it." *Arkansas* v. *Sanders,* 442 U.S. 753, 760 (1979), quoting *United States* v. *Jeffers,* 342 U.S. 48, 51 (1951). *Commonwealth* v. *Antobenedetto,* 366 Mass. 51, 57 (1974). Thus, in a criminal

matter, the prosecution bears the burden of proving that the search was justified pursuant to consent. *Schneckloth* v. *Bustamonte, supra* at 222. We do not find the situation significantly different in the civil context when a plaintiff alleges the violation of his constitutional rights under the Fourth Amendment. Proof that the police conducted a warrantless search of his apartment was sufficient for the plaintiff to show a constitutional violation. As in the criminal context, the defendants may then rely on one of the "specifically established and well-delineated exceptions" to justify the search and avoid liability under § 1983. This result is in accord with several other courts that have considered this issue. *Hinton* v. *Geary,* 618 F. Supp. 842, 846 (S.D.N.Y. 1985), aff'd, 795 F.2d 1004 (2d Cir. 1986). *Huotari* v. *Vanderport,* 380 F. Supp. 645, 648 (D. Minn. 1974). Accord *Reyes* v. *Edmunds,* 472 F. Supp. 1218, 1223 (D. Minn. 1979). See *Brenon* v. *State,* 31 A.D.2d 776 (N.Y. 1969).

With respect to the issue of consent, Keane further maintains that the trial judge erred in not allowing the defendants to introduce evidence of the plaintiff's cooperation with the police during the homicide investigation. Specifically, Keane points to (1) a line of questioning that attempted to elicit from the plaintiff admissions that he cooperated with the police by answering questions concerning the homicide, and (2) testimony offered by Hendrigan that the plaintiff volunteered information concerning the murder weapon and suggested certain individuals who would have access to such a weapon. In both instances, the judge prevented the defendant from pursuing further inquiry which the defendant contends was relevant to his argument that the plaintiff consented to the searches of his apartment. While it is possible that these questions, in a larger context of testimony, might have borne on the issue of consent, the record here is such that the judge in his discretion properly excluded the testimony. The defendant failed to lay a foundation demonstrating the relevance of the line of inquiry. Compare *Commonwealth* v. *Harmond,* 376 Mass. 557, 561 (1978); *Commonwealth* v. *Walker,* 370 Mass. 548, 555, cert. denied, 429 U.S. 943 (1976); *Commonwealth* v. *Aguiar,* 370 Mass. 490, 496 (1976).

The defendant next argues that the judge erred in excluding evidence of the plaintiff's failure at the prior criminal trial to file a motion to suppress evidence seized during the alleged unconstitutional search. The defendant does not contend that the plaintiff's failure to file a motion to suppress in the criminal trial serves to waive any challenge to the constitutionality of the search under § 1983, see *Cramer* v. *Crutchfield,* 648 F.2d 943, 945 (4th Cir. 1981), but that evidence of this failure should be admissible in the civil trial. The defendant cites *Aetna Casualty & Sur. Co.* v. *Niziolek,* 395 Mass. 737 (1985), and *Morrissey* v. *Powell,* 304 Mass. 268 (1939), and analogizes the withdrawn guilty plea entered in the criminal trial of those cases to the failure of the defendant to move to suppress evidence in this case. However, there is a major distinction between a withdrawn guilty plea and the failure to move to suppress evidence. As we stated in *Morrissey* v. *Powell, supra* at 269, "[a] plea of 'guilty' is an admission of the material facts alleged in the complaint or indictment, . . . and in so far as it amounts to an admission of facts material in the trial of a civil case to which the person so pleading is a party, it is admissible as evidence against him [citations omitted]." The failure of the plaintiff to file a motion in the criminal trial to suppress evidence seized during the alleged unconstitutional search is not an affirmative act of admission analogous to a guilty plea nor do we construe it as an "adoptive admission." See *Commonwealth* v. *Rembiszewski,* 363 Mass. 311, 316 (1973), rev'd on other grounds, 391 Mass. 123 (1984), and cases cited. Although the defendant argues that there was no reason why the plaintiff would not move to suppress "highly prejudicial illegally seized evidence," we agree with the judge that the failure to move to suppress evidence seized during the allegedly unconstitutional search could have been a matter of trial tactics. There was no error.

4. The jury returned a verdict of $2,500 in compensatory damages against Keane on the Federal civil rights claim. Keane argues that the judge erred in denying his motion for a new trial on the issue of damages because the plaintiff failed to present any evidence of actual damages suffered. We have reviewed the record and agree with the defendant.

The Supreme Court has held that a plaintiff must prove actual injury as a prerequisite to the recovery of damages in a § 1983 claim. "[D]amages are available under [§ 1983] for actions 'found . . . to have been violative of . . . constitutional rights *and to have caused compensable injury . . . .*'" *Carey* v. *Piphus,* 435 U.S. 247, 255 (1978), quoting *Wood* v. *Strickland,* 420 U.S. 308, 319 (1975) (emphasis in original). The Supreme Court has defined compensable injury to include "not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation . . . , personal humiliation, and mental anguish and suffering.'" *Memphis Community School Dist.* v. *Stachura,* 477 U.S. 299, 307 (1986), quoting *Gertz* v. *Robert Welch, Inc.,* 418 U.S. 323, 350 (1974). This requirement that damages be shown is in accord with the basic purpose of § 1983 which is to "compensate persons for injuries that are caused by the deprivation of constitutional rights." *Carey* v. *Piphus, supra* at 254.

The plaintiff presented no evidence of any damage relating to either out-of-pocket expenses or emotional distress suffered by him as a result of the search of his apartment. Nor was there any evidence (and here we take notice of the plethora of evidence that the plaintiff procured the murder of his wife, see *Commonwealth* v. *Tyree, supra* at 205), that the illegal search resulted in the plaintiff's conviction on the murder charge, or caused him mental suffering, out-of-pocket loss, or impairment of his reputation. In the absence of evidence demonstrating actual injury, the plaintiff was entitled to, at most, nominal damages, "not to exceed one dollar." *Carey* v. *Piphus, supra* at 266-267. The defendant Keane, through a seasonable request, asked that the jury be instructed that they could award no more than $1 on any of the claims against Keane, including the civil rights claim; the judge allowed this request as to all of the claims against Keane except the civil rights claim. Although the colloquy between Keane's counsel and the judge is not entirely clear in its meaning, we think the record can fairly be read as recording Keane's objection to the judge's declination to give the requested instruction as to the civil rights claim. Because there was no evidence of actual damages,

the trial judge, having failed to instruct the jury as requested, should have granted a new trial on this issue.

5. In summary, we find no error in the denial of the plaintiff's motion for a new trial and affirm the judgments with respect to the defendant Hendrigan. We also affirm the judgments against Keane, each in the nominal sum of $1, as to the trespass and invasion of privacy claims.[5] Because of errors in the admission of evidence and in the determination of damages, we reverse the judgment under 42 U.S.C. § 1983 (1976) with respect to the defendant Keane. At his option, Keane is to have a new trial on the § 1983 claim, or the entry of judgment for the plaintiff on that claim in the amount of $1.

*So ordered.*

---

[5] Although the defendant Keane's appeal was of all judgments, none of his arguments on appeal relates to the trespass or invasion of privacy claims, and thus those judgments stand uncontested.