CARE AND PROTECTION OF GEORGETTE
(and three companion cases[1,2]).

No. 01-P-159.

Bristol. September 12, 2001. - May 22, 2002.

Present: PORADA, LAURENCE, & KAFKER, JJ.

Further appellate review granted, 437 Mass. 1110 (2002).

*Minor*, Care and protection. *Parent and Child*, Care and protection of minor,
Custody of minor, Interference with parental rights. *Interference with
Parental Rights*. *Practice, Civil*, Care and protection proceeding, Findings
by judge, Assistance of counsel.

At a proceeding terminating the father's parental rights as to two daughters
and placing three other daughters in the permanent custody of the Depart-
ment of Social Services, the judge's findings provided ample support for
the conclusion that the father was unfit; moreover, claims that the judge
relied on "extrajudicial" information, on evidence that had been struck
pursuant to motions in limine, and on "stale" evidence, and that the

---

[1]Care and Protection of Lucy; Adoption of Beth; and Adoption of Judith.
All children's names throughout this opinion are pseudonyms.

[2]Seven children were originally involved in this case: Bruce, born on May
22, 1978; Michelle, born on August 25, 1980; Rena, born on July 20, 1983;
Georgette, born on September 20, 1984; Lucy, born on September 26, 1986;
Beth, born on February 17, 1989; and Judith, born on June 17, 1990. Bruce
and Michelle were dismissed from the case before trial when they reached the
age of eighteen; the trial judge's findings of fact and conclusions of law ap-
pealed from do not concern them. Rena has now also reached eighteen, and
she is not part of this appeal. All of these children, with the exception of
Bruce, are female, and the youngest five children, i.e., Rena, Georgette, Lucy,
Beth, and Judith, are the biological children of the father involved in this
appeal. All of the children were removed from their home in August, 1993,
after the Department of Social Services (DSS) had received and substantiated
several reports (pursuant to G. L. c. 119, § 51A) of neglect, domestic violence,
and alcohol abuse. They have resided continuously in foster care since that
time. On the basis of his findings of fact and conclusions of law after a
fourteen-day trial beginning in March, 1998, the trial judge determined these
five children to be in need of care and protection, terminated the father's right
to consent to adoption for Beth and Judith, and placed Rena, Georgette, and
Lucy in the permanent custody of DSS. The father, Georgette, and Lucy have
appealed. The mother of the children, who was also found unfit, has not been
heard from since June, 1996, and is not part of these proceedings.

evidence did not support the findings as to the applicability to the father of certain factors enumerated in G. L. c. 210, § 3, were without merit. [781-785]

At a hearing on a motion brought by two daughters for a new trial pursuant to Mass.R.Civ.P. 60(b)(6), 365 Mass. 828 (1974), filed thirteen months after a proceeding to terminate their father's parental rights as to two daughters and placing the two daughters bringing the motion and another daughter in the permanent custody of the Department of Social Services, the judge properly denied the motion as not involving the sort of extraordinary circumstances that such a motion is intended to address, as not presenting a meritorious claim of ineffective assistance of counsel, as subversive of the finality that children's cases require, and as productive of undue hardship and delay. [785-794]

PETITIONS filed in the Bristol County Division of the Juvenile Court Department on August 19, 1993.

The cases were heard by *Ronald D. Harper*, J., and motions for a new trial and to vacate the decree, dismiss the petitions, and grant custody, filed on March 28, 2000, were heard by *Mark E. Lawton*, J.

*Matthew H. Beaulieu* for Georgette.

*Susan F. Drogin* for the father.

*Richard A. Salcedo* for Department of Social Services.

*Deborah D. Wolf* for Beth & another.

LAURENCE, J. A father appeals from a March 12, 1999, decision by a judge of the New Bedford Juvenile Court terminating his parental rights as to two of his daughters (Beth and Judith) and placing three other daughters (Rena, Georgette, and Lucy) in the permanent custody of the Department of Social Services (DSS). He alleges a variety of procedural and evidentiary grounds but chiefly challenges the ultimate finding of his unfitness as unsupported by the requisite quantum of clear and convincing evidence. Two of his children (Georgette and Lucy) appeal from a second Juvenile Court judge's denial of their March 28, 2000, motion for a new trial pursuant to Mass.R. Civ.P. 60(b)(6), 365 Mass. 828 (1974). That motion alleged that the attorney who was appointed in 1993 (after all of the children were removed from their home) to represent them and their three siblings rendered Georgette and Lucy constitutionally ineffective assistance at trial. They identify that ineffectiveness

as the attorney's allegedly impermissible conflict of interest by virtue of his advocating for a finding of the father's parental unfitness as to all the children, while they wanted him to advocate that the two of them should remain with the father.[3]

Our review of the voluminous record firmly persuades us that the appellants' several arguments are without merit; that the trial judge committed no legal error; that his findings and conclusions easily survive appellate review; and that the motion judge correctly denied the children's rule 60(b) motion. The trial judge's detailed subsidiary findings, contained in 185 separate paragraphs and subparagraphs, not only reflect the conscientiousness, high degree of care, and close attention that he was obligated to, and did, exercise in this important and difficult matter, but also are amply supported by admissible evidence. The judge's ultimate finding and conclusion flowing from the totality of the evidence — that the father is currently unfit to provide for the welfare and best interests of Beth and Judith, with no reasonable expectation of his becoming able to do so in the foreseeable future — was reached after due consideration of the relevant statutory factors and rested not merely on clear and convincing evidence but on overwhelming evidence of that unfitness. Further, the judge's ultimate finding that the father is unfit and that DSS be granted custody with respect to Rena, Georgette, and Lucy is similarly supported by clear and convincing evidence. The two children's sole appellate contention, that the motion judge erroneously denied their right to a new trial on account of the supposed ineffectiveness of their conflicted trial counsel, is unsupported either by applicable law or on this record.

Accordingly, we affirm the decisions appealed from, finding ourselves in substantial agreement with the trial judge's findings and conclusions and the motion judge's memorandum of decision, as well as the factual analyses, reasoning, and authorities

---

[3]At oral argument, no one appeared on behalf of Lucy, and the appellate attorney who had filed an appellants' brief for Georgette and Lucy informed the court that Lucy no longer wanted him to act on her behalf. We have received no formal dismissal or withdrawal of the appeal by or for Lucy; and, although it might appear that Lucy has disassociated herself from the arguments in the brief, we have treated her as having waived her right to oral argument and submitted her case on the brief.

set forth in the briefs of DSS and the appellee children (Beth and Judith).

*As to the father.* There is no need to rehearse the depressing chronicle of the father's shortcomings, deficits, and misdeeds reflected in the detailed findings, covering over ten years of DSS interventions and proceedings and emerging from fourteen trial days at which twenty-two witnesses (including experts) testified and sixty-nine exhibits were introduced.[4]

The father has challenged a mere handful of the trial judge's

[4]The father's unfitness was clearly, convincingly, and decisively established by the evidence of his persistent failure to nurture or provide for the basic needs of his children, even when he lived with them (which he did not after January, 1993, when he deserted the family), which failure contributed directly to their long-standing neglect and want of food, clothing, and hygiene; his lengthy separation from and effective lack of involvement with the children; his failure ever to maintain any semblance of a stable home environment, resulting in transience and instability in his living arrangements; his inability to support himself, much less his family, and his irresponsible mismanagement of the few financial resources he did acquire (essentially all from public welfare, relief, and benefit programs); his engaging in antisocial behavior, leading to arrests and criminal charges ranging from welfare fraud to drunk driving and driving to endanger, to violation of G. L. c. 209A orders, to assaults on the police and to criminal assault with a dangerous weapon; his lengthy history of domestic abuse and physical violence, against both the mother and the children, as well as relatives (which included putting a gun to the mother's head in front of the children, daily beatings of the children, and frequent attacks on the mother that would leave bruises, and led to fifteen c. 209A orders being taken out against him, which he regularly violated); his life-long and essentially uncontrolled alcoholism and alcohol dependence, which not only continued up to, but, by his own admission, had become worse than ever by the time of, trial; his sexual abuse of at least two of his daughters (Michelle and Lucy), one over a period of at least two years; his repeated failures and refusals to comply with, and to provide adequate evidence of any partial compliance regarding, DSS's many service plans and his failure to make meaningful use of offered services; his regularly inappropriate behavior during supervised visitations with the children, including, but not limited to, lack of interaction with the children, inability to provide limits and discipline, outbursts of anger and frustration, yelling and swearing, discussions of improper subjects, hostile and intimidating conduct toward the supervising social workers in the presence of the children, and showing up for some visits under the influence of alcohol or other substances; his wholesale denial of any responsibility for his crimes, his domestic abuse, his sexual abuse, his acts of violence, or any of his other shortcomings; his narrow focus on his own welfare, needs, and perceived problems above those of his children, resulting in an inability constructively to acknowledge and address their physical, emotional, and behavioral problems, anxieties, and traumas; and his inability to demonstrate any meaningful progress or improvement with respect

subsidiary findings as being unsupported by the record, but those challenges are unavailing, because the remaining seven score unchallenged findings provide more than sufficient basis for the judge's conclusion as to the father's unfitness.[5] Moreover, the few challenged findings are amply supported by other, unchallenged findings resting on admissible evidence; represent reasonable inferences drawn from evidence in the record or findings that are unchallenged; or rest upon the judge's unquestioned and unreviewable right to credit the testimony of DSS witnesses and experts rather than that which the father deems favorable to him (especially regarding his poor and unimproved parenting skills and his unshakable alcoholism problem).

The father's four related evidentiary complaints — that the trial judge supposedly relied on "extrajudicial" information, on evidence that had been stricken pursuant to motions in limine, and on "stale" evidence, and that the evidence did not support the findings as to the applicability to him of certain statutory factors enumerated in G. L. c. 210, § 3 — have no greater merit. His assertion that the judge improperly reviewed "extrajudicial" information about the case prior to the first day of trial in March, 1998 (based upon the judge's statement made on the first day of trial as to having prepared therefor by spending several hours reading various, mostly unidentified, documents relating to the case) has been waived, since he did not raise it or make any relevant objection during the trial.[6]

In any event, it is an ahistorical argument that fails to

to his deficiencies, including his lack of parenting skills, that would support any reasonable expectation that he would, in the foreseeable future, become an effective, appropriate, nonabusive, and nonaddicted parent.

[5]It is enough to refute the father's evidentiary attack to note that he either does not challenge, or fails to demonstrate any error (let alone clear error) in, the judge's findings regarding his history of domestic abuse and physical violence against the mother, his unremitting neglect of his children's basic needs, his physical and sexual abuse of the children, his criminal record, his inability to maintain a stable home or manage his finances, the poor quality of his visits with the children, and his consistent failure to comply adequately (much less fully) with DSS's service plans.

[6]See *Adoption of Mary*, 414 Mass. 705, 711-712 (1993). This is not such an exceptional case (given the overwhelming evidence of the father's unfitness and his untrammeled opportunity to have preserved the issue below) that in our discretion it is worthy of review to avoid injustice or provide assistance

recognize that the judge had presided over matters related to the children for a period stretching back over five years. There had been investigative reports, hearings, and evidentiary submissions going back at least to August, 1993, and the judge was almost surely referring to documentary evidence that had previously been generated, presented, or admitted during the long drawn-out proceedings involving the children's care and welfare.[7] Additionally, it speculatively presumes that the judge's action constituted improper consideration of facts not in evidence in the case. This is fallacious, not only for the reasons stated in the preceding sentence but also because it is virtually certain (and, indeed, *is* certain as to the few identifiable documents mentioned by the judge) that, whatever the so-called "extrajudicial" information the father complains the judge consulted may have been, it was eventually introduced in evidence over the fourteen-day trial that followed the judge's remarks and therefore could be properly relied on.[8]

for other cases. See *Petition of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 392 Mass. 696, 697 (1984); *Atlas Tack Corp.* v. *DiMasi*, 37 Mass. App. Ct. 66, 70-71 (1994). The cases cited in the father's brief, for his assertion that his case is exceptional, either bear no factual resemblance to the instant circumstances or fail to support his claim, especially since there is nothing to establish that the judge here relied on inadmissible or highly prejudicial evidence. Since the father admits that it is impossible to know precisely what the judge read, we have no principled way to consider the alleged error based on unidentified documents. See *New Bedford Gas & Edison Light Co.* v. *Assessors of Dartmouth*, 368 Mass. 745, 749-751 (1975).

[7]The father's related contention, that the judge was obliged to work from a "blank slate," could not consider any evidence relating to the children at issue that antedated the trial, and had to confine himself to evidence admitted in the subsequent trial, *is* not merely unworthy of appellate consideration for being unsupported by citation to relevant authority, see Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), but is in fact contrary to authority and settled practice in such matters. See *Adoption of Frederick*, 405 Mass. 1, 12 (1989); *Adoption of Carla*, 416 Mass. 510, 516 n.6 (1993); *Custody of a Minor (No. 2)*, 22 Mass. App. Ct. 91, 94 (1986); *Care and Protection of Isabelle*, 33 Mass. App. Ct. 548, 551-552 (1992).

[8]The father piles speculation upon speculation by alleging that certain comments and questioning by the judge during trial demonstrated bias against the father that must have been engendered by the unknown "extrajudicial" evidence. Aside from the fact that the few identified judicial remarks claimed to reflect bias reveal little or nothing about their documentary basis or origin and cannot be attributed to an extrajudicial source, and, in any event, were not objected to, the challenged questions do not reveal a closed mind but rather

The father's assertion that the judge struck but then relied on certain information contained in court investigators' reports, G. L. c. 119, § 51A, reports, and a social worker's affidavit is equally baseless. Very little information was in fact stricken (a truly tiny portion of the sizeable body of evidence presented in the case); the father has failed to identify, and we cannot discern, any findings based solely on stricken material; and no serious argument has been made that the stricken information had any impact on the judge's ultimate findings and conclusions.[9]

The father's complaint that the evidence was too "stale" to support a finding of unfitness ignores the propriety of the judge's reliance on prior patterns of ongoing or repeated parental neglect, abuse, and misconduct as reliable prognosticators (particularly so when, as here, they are supported by expert opinion) in assessing a parent's present and likely future capacity and ability to care for his children. See *Adoption of Diane*, 400 Mass. 196, 204 (1987). It also evades the fact that there was evidence (much of it from testimony the judge expressly found credible) of his continued unfitness up to or near the time of trial, including the father's unabated alcohol problems, noncompliance with plans and services, and the poor and unimproved quality of his interactions with his children.

The father's last evidentiary challenge, to the alleged lack of evidence for the judge's findings on the applicability of certain of the factors to be considered pursuant to G. L. c. 210, § 3, in dispensing with consent to adoption (chiefly concerning the extent to which the father had been offered but did not take advantage of services designed to address his parenting deficiencies), also fails. As noted earlier, those findings are either sup-

---

permissible, active judicial engagement in the fact-finding process. See *Care and Protection of Martha*, 407 Mass. 319, 329-330 (1990); *Petitions of Catholic Charitable Bureau of the Archdiocese of Boston, Inc., to Dispense with Consent to Adoption*, 22 Mass. App. Ct. 48, 59 (1986); *Adoption of Seth*, 29 Mass. App. Ct. 343, 350-351 (1990).

[9]The father's contention appears to be the confused product of the fact that the redacted documents from which some information was stricken were later introduced and, quite properly, considered and relied on by the judge.

ported by the record evidence or rationally inferrable from other supported findings.[10]

*As to Georgette and Lucy.* Georgette and Lucy did not appeal the March 12, 1999, order committing them to the permanent custody of DSS. Nor did they move for a new trial within ten days of entry of the judgment thereon, pursuant to Mass.R. Civ.P. 59, 365 Mass. 827 (1974),[11] as they could have on the is-

---

[10]The father's remaining legal arguments require little extended discussion. His protest that he was denied his supposed constitutional right of confrontation at trial (because of his positioning so as to be out of the line of vision of one of the daughters while she testified about his sexual abuse of her) has no merit in light of *Adoption of Don*, 435 Mass. 158, 167-169 (2001). His claim of abuse of discretion by the Juvenile Court judge who denied his posttrial motion to vacate the order of the trial judge (who had retired) as to the father's unfitness, dismiss all of DSS's petitions, and grant full custody to him, is entirely conclusory and unsupported by citation to relevant authority (contrary to Mass.R.A.P. 16[a][4]), as well as futilely reliant on "all of the reasons" set forth in his brief against the finding of his parental unfitness — none of which has any substance, as discussed above. Finally, his attack on the trial judge's vacating of the previous visitation orders and leaving the issue to DSS's discretion is erroneously based upon a misreading of the distinguishable cited cases (*Adoption of Vito*, 431 Mass. 550 [2000]; *Adoption of Greta*, 431 Mass. 577 [2000]) and of DSS's authority under G. L. c. 119, § 21, vis-à-vis children committed to its custody (" 'custody' shall include the . . . power[] . . . to control visits to the child"). The father's position also fails to acknowledge that such matters are left to the sound discretion of the trial judge (see *Adoption of Nicole*, 40 Mass. App. Ct. 259, 264 [1996]); that in ordering posttrial visitation, the proper focus is on the best interests of the child and on parental unfitness, rather than the rights of the parent (see *Adoption of Mary*, 414 Mass. 705, 712 [1993]; *Adoption of Helen*, 429 Mass. 856, 863 [1999]); and that the judge made extensive findings as to the consistently unsatisfactory nature of the father's visitation record, often stimulating inappropriate behavior or upset on the part of the children. From those findings alone, the judge could rationally conclude that visitation so potentially productive of harmful impact upon the children should be subject to the regulation by DSS. Cf. G. L. c. 208, § 31A, which requires the judge, in considering the issue of visitation by a non-custodial parent found to be abusive, to "provide[] for the safety and well-being of the child" and authorizes the court to "impos[e] any . . . condition that is deemed necessary" for such safety and well-being. In connection with the father's professed dissatisfaction with the judge's visitation order, we note that he has had five opportunities to press for redetermination thereof since the judge's March 12, 1999, decision as to the children in the department's custody, pursuant to G. L. c. 119, § 26, but he has taken advantage of none of them.

[11]Although the Massachusetts Rules of Civil Procedure have not been expressly made applicable to Juvenile Court proceedings, they are accepted "as a cogent standard" in children's cases there. *Care and Protection of*

sue that they then knew, or should have known, they had and of which they now complain, namely misconduct of counsel in acting for an adversary during trial (which had concluded eight months prior to the entry of the judgment) in a manner prejudicial to their interests. See Smith and Zobel, Rules Practice § 59.8 (1977).[12] Instead, on March 28, 2000 (almost thirteen months after the judgment and twenty months after the completion of the trial), they filed (by new appellate counsel) a "Motion for a New Trial Pursuant to Massachusetts Rules of Civil Procedure Rule 60(b)(6)." That motion was supported only by the affidavit of appellate counsel, which averred that Georgette and Lucy wanted and were entitled to have the care and protection orders with respect to them vacated and a new trial ordered on the issue of their father's unfitness because of ineffective representation by their trial attorney. That attorney (who had been appointed in 1993 to represent all five siblings) had, the motion charged, an "actual" or "genuine" conflict of interest arising from his trial advocacy of the father's unfitness as to all five minor children before the court, in alleged direct opposition to Georgette and Lucy's claimed position that they wanted to be returned to their father's custody.[13]

On June 29, 2000, the second Juvenile Court judge, crediting

*Zelda*, 26 Mass. App. Ct. 869, 871 (1989). Accord *Adoption of Hugh*, 35 Mass. App. Ct. 346, 347, 351 (1993) (applying Mass.R.Civ.P. 60[b] in Probate Court adoption proceeding); *Adoption of Reid*, 39 Mass. App. Ct. 338, 341 (1995) (reviewing posttrial motion for relief from judgment based on alleged ineffectiveness of trial counsel under Mass.R.Civ.P. 60[b][6]). Contrast *Petition of Worcester's Children's Friend Soc. to Dispense with Consent to Adoption*, 9 Mass. App. Ct. 594, 602 (1980).

[12]The children's appellate brief explicitly accuses their prior counsel of "advocating against them," taking positions "diametrically opposed to" theirs, and "set[ting] himself squarely against . . . [their] goals and objectives," behavior which, were it true, would be deemed misconduct under our ethical standards. See former Supreme Judicial Court Rule 3:07, DR 1-102, as appearing in 382 Mass. 769-700 (1981), now Mass.R.Prof.C. 8.4, 426 Mass. 1429-1430 (1998).

[13]This motion did not charge trial counsel with ineffectiveness for not filing a notice of appeal on their behalf from the March 12, 1999, judgment; for failing to call witnesses or introduce documents that would have been favorable to their case; for failing to inform the court of their supposed position; for failing to competently represent them during the five years he had been representing them prior to the 1998 termination hearing; or for any reason other than that he failed to "advocate" during trial for their desire to return to

the affidavit filed by Georgette and Lucy's trial counsel in opposition to their rule 60(b) motion, denied the motion. While indicating that the motion was probably untimely, he expressly rejected it as not involving the sort of extraordinary circumstances that such a motion is intended to address; as not presenting a meritorious claim of ineffective assistance; as subversive of the finality that children's cases require; and as productive of undue hardship and delay of the sort to be avoided in proceedings involving the State's important interest in protecting the welfare of children.

We have no hesitation in affirming the judge's denial of Georgette's and Lucy's motion for several reasons. First and foremost, their brief ignores the applicable standard of review and the relevant authorities thereunder, and has thus failed to present an adequate argument worthy of appellate consideration in compliance with Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). A judge's denial of a motion under Mass.R. Civ.P. 60(b) is one within his extensive discretion and is entitled to great deference by an appellate court. It will not be reversed on appeal except on a showing, by clear and convincing evidence, that the judge's broad discretion was abused to such an extent that his decision constitutes an arbitrary determination, capricious disposition, whimsical thinking, or idiosyncratic choice that no conscientious judge, acting intelligently, could honestly have reached and which effectively amounts to a miscarriage of justice. See *Department of Rev.* v. *C.M.J.*, 432 Mass. 69, 75-76 (2000); *Artco, Inc.* v. *DiFruscia*, 5 Mass. App. Ct. 513, 517 (1977); *Berube* v. *McKesson Wine & Spirits Co.*, 7 Mass. App. Ct. 426, 434-435 (1979); *Greenleaf* v. *Massachusetts Bay Transp. Authy.*, 22 Mass. App. Ct. 426, 429 (1986); *Tai* v. *Boston*, 45 Mass. App. Ct. 220, 224 (1998); Smith & Zobel,

---

live with their father. Nor did the motion papers assert any particular prejudice resulting from counsel's criticized conduct, or that the outcome of the proceeding would have been any different but for counsel's alleged conflict and failure of advocacy. As noted, the motion was not supported by affidavits of Georgette and Lucy themselves, nor did it specify the timing or nature of any instructions they might have given their trial attorney.

Rules Practice § 60.1 (1977).[14] Having failed to address, much less satisfy, their heavy appellate burden of demonstrating that the motion judge committed a clear abuse of discretion, Georgette's and Lucy's appeal provides no basis for disturbing the judge's ruling on their motion.

That motion could also be rejected as an improper effort to obtain relief under rule 60(b)(6) that should be granted only in extraordinary circumstances, which are not presented when the allegedly aggrieved party could have reasonably sought relief by means of direct appeal.[15] See *Pentucket Manor Chronic Hosp., Inc.* v. *Rate Setting Commn.*, 394 Mass. 233, 236 (1985); *Bromfield* v. *Commonwealth*, 400 Mass. 254, 257 (1987). "To secure relief under rule 60(b)(6) requires a showing of 'extraordinary' circumstances. . . . If cases are to have finality, the operation of rule 60(b) must receive 'extremely meagre scope.' . . . 'Rule 60 is to litigation what mouth-to-mouth resuscitation is to first aid: a life-saving treatment, applicable in desperate cases.' " *Bowers* v. *Board of Appeals of Marshfield*, 16 Mass. App. Ct. 29, 33 & n.5 (1983), quoting from Smith & Zobel, Rules Practice § 60.1 (1977). Compare *Adoption of Whitney*, 53 Mass. App. Ct. 832, 837 (2002). Achieving finality and minimizing delay and uncertainty are appropriate considerations when acting on any rule 60(b) motion (see *Chiu-Kun Woo* v. *Moy*, 17 Mass. App. Ct. 949, 950 [1983]; *Tibbits* v. *Wisiniewski*, 27 Mass. App. Ct. 729, 732 [1989]); they are prime considerations (as the motion judge properly recognized here) when the rights, interests, and welfare of children in custody and adoption proceedings are involved. See *Custody & Adop-*

---

[14]Essentially the same deferential standard applies to review of appeals from denials of "conventional" motions for new trial made under Mass.R. Civ.P. 59. See *Walsh* v. *Chestnut Hill Bank & Trust Co.*, 414 Mass. 283, 292 (1993); *Commonwealth* v. *Johnson Insulation*, 425 Mass. 650, 668 (1997); *Burke* v. *Gallison*, 7 Mass. App. Ct. 918, 919 (1979); *Adams* v. *United States Steel Corp.*, 24 Mass. App. Ct. 102, 103-104 (1987).

[15]Georgette's and Lucy's appeal also ignores the reality that the appeal of an order denying relief under rule 60(b) raises only the correctness of that denial, and the appellant may not attack the underlying judgment on a ground that she might have raised had she appealed. See *Muir* v. *Hall*, 37 Mass. App. Ct. 38, 41 (1994). The recurring assertions in their brief that the trial evidence supported a finding of the father's parental fitness are, therefore, not properly before us.

*tion of Ned*, 28 Mass. App. Ct. 557, 560 (1990); *Adoption of Hugh*, 35 Mass. App. Ct. 346, 353-354 (1993).

Further, the motion judge expressly concluded that Georgette's and Lucy's trial counsel had in fact provided effective assistance to them in making the court aware of their expressed wish to be returned to their father while nonetheless advocating that they not be returned to the custody of the violent, abusive, alcoholic and resistant father. The judge also determined that such representation had been in Georgette's and Lucy's best interests and not in conflict with counsel's obligations to them or to the five siblings as a whole. Georgette's and Lucy's brief fails to challenge (except inferentially) any of these findings and conclusions as being clearly or legally erroneous or abuses of discretion on this record, and they are, accordingly, entitled to deference on appeal. See *Berube* v. *McKesson Wine & Spirits Co.*, 7 Mass. App. Ct. at 434. Cf. *Guerin* v. *Commonwealth*, 339 Mass. 731, 734-735 (1959); *Fogarty* v. *Commonwealth*, 406 Mass. 103, 107-111 (1989).

Finally, the motion judge confronted and resolved without abuse of discretion the relevant factors to be considered when ruling on a motion under rule 60(b)(6): whether the circumstances were so extraordinary as to warrant relief; whether the moving party presented a "meritorious" contention; and whether the "substantial rights" of other parties would be adversely affected by granting the motion. See *Parrell* v. *Keenan*, 389 Mass. 809, 815 (1983).

Several circumstances buttress the judge's determination that Georgette's and Lucy's situation does not involve extraordinary circumstances: their failure to have raised their now-claimed grievance over the several years of their representation by the challenged counsel, particularly during trial or for many months thereafter, despite frequent opportunities to do so (including at in-chambers meetings with the judge and by direct appeal); the conspicuous absence of affidavits or other evidence submitted in support of the motion reflecting the actual, current attitudes and intentions of Georgette and Lucy themselves; the overwhelming evidence in the record documenting the unfitness of the father to be awarded custody of Georgette and Lucy; and their semiannual (as yet forgone) opportunities since the judgment and over

the next several years, at review and redetermination hearings pursuant to G. L. c. 119, § 26, to be heard on the issues of custody and their current needs, with the assistance of counsel presumably unaffected by disabling conflict.[16]

The judge's evaluation of the appellants' claim of ineffective assistance of counsel, based upon trial counsel's supposedly inherent and per se reversible conflict of interest, as not sufficiently meritorious was also sound. It is noteworthy that the appellants proffer not a single authoritative decision upholding their argument, which appears at odds with the Supreme Judicial Court's pronouncements in *Adoption of Erica*, 426 Mass. 55 (1997) (cited and relied on by the judge).[17] It appears, as well, unsupported by the only relevant ethical opinion, Massachusetts

---

[16]Compare *Friedman* v. *Board of Registration in Med.*, 414 Mass. 663, 664-665 (1993) (motion under rule 60[b][6] cannot be used to vacate a judgment after the statutory appeal period has expired without an appeal); *Tibbits* v. *Wisniewski*, 27 Mass. App. Ct. at 732-733 (inexcusable unprofessional conduct by party's attorney causing adverse judgment against him does not qualify as an exceptional circumstance justifying relief under the "extremely narrow and meagre scope" of rule 60[b][6]). Contrast *Chavoor* v. *Lewis*, 383 Mass. 801, 805-807 (1981) (a motion under rule 60[b][6] to vacate a judgment of dismissal against a plaintiff who failed to show up on the day trial was scheduled presented an appropriate case for relief under the rule because the plaintiff established he had never received notice from the court either of the call for trial or of the judgment, a "fundamental flaw"); *Parrell* v. *Keenan*, 389 Mass. at 816 (relief available under rule 60[b][6] from a purported consent judgment and release was never authorized or executed by the moving party); *Winthrop Corp.* v. *Lowenthal*, 29 Mass. App. Ct. 180, 186-189 (1990) (a rule 60[b][6] motion was properly used to vacate a judgment on an arbitrator's legal fee award that was based on the prevailing litigant's deliberate nondisclosure of a contingent fee agreement that controlled the amount of the legal fees); *Pielech* v. *Massasoit Greyhound, Inc.*, 47 Mass. App. Ct. 322, 325-327 (1999) (a legislative enactment explicitly intended to create retroactively a cause of action for plaintiffs constituted an extraordinary circumstance warranting relief under rule 60[b][6] from the summary judgment dismissing their pre-enactment action). Additionally, we are reliably informed that in care and protection and adoption cases involving multiple siblings, it is now common for judges of the Juvenile Court to appoint a different attorney to represent each child. Such a practice manifestly avoids the issues raised in Georgette and Lucy's new trial motion and on appeal and confirms that this case does not constitute an extraordinary circumstance, in the sense of presenting an important and unresolved matter of public interest or a situation that might well affect others by its recurrence.

[17]In *Adoption of Erica*, the court stated that "[e]ven where it is undisputed that a child and her attorney disagree, the law is unclear as to whether the attorney is always bound by her minor client's decision when the attorney feels

Bar Association (MBA) Committee on Professional Ethics, Opinion No. 93-6 (1993)[18] (dealing with an attorney representing a thirteen year old child in a care and protection proceeding in which the minor client instructed the lawyer to advocate for her return to her mother, which the lawyer deemed contrary to her best interest because of the mother's unfitness).[19]

that the child's decision is not in her own best interest. . . . We are particularly hesitant to conclude that a difference of opinion between what a young child . . . expresses as her wish and the position of her attorney necessarily suggests a conflict of interest." 426 Mass. at 63 n.9. The court stressed that "[w]e encourage deference to an attorney's best judgment as to whether her representation of a client brings her into conflict with any provision of the disciplinary code." *Id.* at 63. The court observed (as relevant here) that the trial judge in *Erica* had been made aware of the supposed conflict issue (*id.* at 65) and that it was "troubled" by the delay, the issue being raised more than seven years after counsel's appointment, during which period the representation had never been questioned. *Id.* at 65-66.

[18]In that opinion, the MBA Committee on Professional Ethics observed that "[t]he issue presented is a difficult one that has divided practitioners and commentators in the field" and was not expressly addressed by the (then-applicable) disciplinary rules. The committee stated, however, that it would be appropriate representation for a lawyer who determines (as the judge found the appellants' counsel did here) after considering all the circumstances that the client was not sufficiently mature to be capable of making a considered judgment as to her best interests on her own behalf and that her expressed desires were inconsistent with her best interests, to inform the court of that fact and that he is effectively proceeding on a "substituted judgment" basis, i.e., on the basis of what he thinks the child would desire were she competent to understand her options and the risks associated therewith, so long as the lawyer also advises the court (as the appellants' counsel did here on several occasions) of the client's own stated desires and interests to the contrary.

[19]As appears, unfortunately, to be common with children in such cases, Georgette and Lucy wavered and changed their positions toward their father over the lengthy period of the DSS proceedings. As the judge found, Georgette — a deeply troubled youth described by her therapist as very immature for her age (thirteen at the time of trial), with little insight, who had been held back three times in school, who had been physically abused at the hands of her father and refused to visit him at times — expressed a desire to return to her father's care while simultaneously saying that she would not mind staying in her current foster placement. Lucy (who was eleven years old at trial and who may or may not remain associated with Georgette's appellate arguments [see note 3, *supra*]) suffered from her father's neglect, was sexually abused by him, testified to that sexual abuse at trial, and has elevated levels of lead amounting to lead poisoning in her system, yet expressed a wish to return to live with her father. Given this background of vacillation and questionable maturity on the part of Georgette and Lucy, we find it troubling that the stated

We do not, however, have to decide the novel and difficult issue whether trial counsel's performance in the particular circumstances fell measurably below that which may be expected from an ordinary fallible lawyer, as contended in Georgette's and Lucy's brief, in order to uphold the judge's denial of their motion. As the judge correctly held, even were that performance deemed subpar, Georgette and Lucy failed to establish the second prong of the governing test from *Commonwealth* v. *Saferian*, 366 Mass. 89, 96-98:[20] that they were thereby deprived of an available, substantial argument or theory the presentation of which would have accomplished something material for them or would likely have made a difference in the outcome. See *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115

---

basis for their novel "conflict of interest" contention — the conclusory assertion that Georgette and Lucy were fully competent to make informed judgments for themselves as to their own interests and to instruct their attorney to advocate for their reunification with their father — was not supported by contemporaneous affidavits from them as part of their rule 60(b)(6) motion expressly declaring their continued desire to return to their father's custody thirteen months after the judgment. We also observe that the supposed existence of such a desire appears inconsistent with their failure to have pressed their rights to have biannual review and redetermination of their current needs. The premise that Georgette and Lucy were fully competent at trial to gauge their own interests, express them, and instruct their attorney to advance them also does not square with the fact that the record reveals that Georgette and Lucy were apparently not autonomous or self-aware enough to have ever actually objected to what their appellate counsel now condemns as blatantly disloyal conduct on the part of their trial attorney, despite continuing and unobstructed opportunities to do so for years before and during the fourteen days of trial, including at lobby conferences with the judge, or for over a year thereafter.

[20]Claims of ineffective assistance of counsel in care and protection and adoption proceedings are measured by the standards set forth in *Commonwealth* v. *Saferian*, 366 Mass. 89, 96-97 (1974), the first prong of which is as just stated above. See *Care and Protection of Stephen*, 401 Mass. 144, 149 (1987); *Adoption of Mary*, 414 Mass. 705, 712-713 (1993). The premise of Georgette's and Lucy's motion, that the criteria for judging ineffectiveness of counsel in their case should be the conflict of interest standards adopted in the criminal representation context, is mistaken. The conflict of interest they have asserted is properly evaluated under the *Saferian* standard and the authority of Supreme Judicial Court Rule 3:07, the Massachusetts Rules of Professional Conduct, which do not make the "actual" versus "potential" conflict dichotomy of criminal cases relied on in Georgette's and Lucy's motion applicable to cases of this sort; nor have the authorities done so. See *Adoption of*

& n.10 (1977); *Commonwealth* v. *Anderson*, 398 Mass. 838, 839 (1986).

The trial judge was well aware of Georgette's and Lucy's stated (if intermittent) desires regarding their father (through testimony, presentations by their now-maligned trial counsel, and lobby conferences). Given the overwhelming evidence of the father's unfitness (as well as the clear and convincing evidence of the two girls' special problems and needs in substantial consequence thereof), which persuaded both the trial judge and the motion judge that it was not in Georgette's and Lucy's best interests to be returned to his care, it is implausible that the most zealous and impassioned arguments by any trial counsel to give their custody to the alcoholic and unrepentant father who had neglected and had physically or sexually abused them would have realistically accomplished any change in the result. See *Adoption of Holly*, 432 Mass. 680, 690 (2000) ("[the father's] parental unfitness was established by overwhelming evidence. [His] claim that further efforts by his trial counsel [charged by the father with ineffective assistance] could have produced a different result has no basis in the record").[21]

Lastly, we see no error in the judge's observation that grant-

*Erica*, 426 Mass. at 58-66; *Adoption of Holly*, 432 Mass. 680, 690 (2000); MBA Committee on Professional Ethics, Opinion No. 93-6, *supra*.

[21]Georgette's and Lucy's motion for a new trial asserted, erroneously relying on criminal cases (see note 19, *supra*), that their trial attorney had an "actual" or "genuine" conflict of interest because of his advocacy for their father's unfitness in opposition to their supposed desire to be placed in his custody and, therefore, that they had no burden to prove any actual prejudice resulting from his representation. Accordingly, in that motion they made no claim that the attorney had done or failed to do anything else that prejudiced their case. See note 12, *supra*. In their appellate brief, they apparently felt the need to hedge their bet by arguing for the first time that their trial attorney had indeed caused them special prejudice: by putting Lucy on the stand to testify as to the father's having sexually abused her; by not objecting to and then not moving to strike Michelle's testimony concerning her prolonged sexual abuse by the father; and by cross-examining other witnesses to elicit evidence of the father's unfitness. Having failed to present these contentions to the motion judge, they have no right to expect us to take them into consideration in reviewing the correctness of his ruling. See *Royal Indem. Co.* v. *Blakely*, 372 Mass. 86, 87-88 (1977); *Wolfberg* v. *Hunter*, 385 Mass. 390, 392 n.4 (1982); *Tyree* v. *Keane*, 400 Mass. 1, 4 n.3 (1987); *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 471 & n.25 (1991); *West Broadway Task Force* v. *Boston Housing Authy.*, 414 Mass. 394, 397 n.2 (1993);

ing the relief sought in Georgette's and Lucy's motion for a new trial — wholly aside from its nonextraordinary and non-meritorious nature — "would vastly affect the substantial rights of the parties and would also have a detrimental effect on" their siblings. As the judge aptly observed, "[j]udgments should not be reopened on the issue of custody and adoption . . . when '[a]ny significant delay would undermine the state's important interest in protecting the welfare of children,' " particularly after the appellants have had a full opportunity to present their evidence on the merits of the case (quoting from *Adoption of Hugh*, 35 Mass. App. Ct. at 353). Relitigation of evidence accumulated over seven or more years — inevitably revisiting the issue of the father's parental fitness — and reassembling the numerous witnesses (who may be unavailable or have faded memories) would, at the very least, undermine the basic policy objective of "[s]peedy resolution of cases involving issues of custody or adoption," *Adoption of Emily*, 25 Mass. App. Ct. 579, 581 (1988), as well as the equally important goal of finality in such cases. Cf. *Adoption of Erica*, 426 Mass. at 64-65 ("We have noted our concern about the high cost to litigants and to the court system occasioned by motions to disqualify attorneys [for alleged conflict of interest] especially when such motions are used as harassment and dilatory tactics. . . . [They are] especially troublesome in a case that involves the resolution of a child's future family life. . . . [Here, the child's] status has been indeterminate for the past seven and one-half years"). The motion judge cannot be faulted for balancing the speculative consequences of the alleged ineffective assistance of counsel for Georgette's and Lucy's rights against the adverse effects that reopening the case would have on the substantial rights and interests of all the siblings and resolving the issue in

---

*Vassallo v. Baxter Healthcare Corp.*, 428 Mass. 1, 11 (1998); *Innis* v. *Innis*, 35 Mass. App. Ct. 115, 117-118 (1993). Again, however, the mass of evidence against this father from sources unrelated to the acts or omissions of Georgette's and Lucy's trial counsel makes it improbable that the result of their care and protection proceeding would have been any different had their attorney acted precisely as they (or at least their appellate counsel) now claim they wanted.

favor of finality. See *Adoption of Hugh*, 35 Mass. App. Ct. at 353-354.

> *Decrees affirmed as to Beth and Judith.*
>
> *Judgments affirmed as to Rena, Georgette, and Lucy.*
>
> *Order denying motion for relief from judgment under rule 60(b)(6) affirmed.*