## Care and Protection of Georgette
### (and three companion cases[1]).

Bristol. February 3, 2003. - March 21, 2003.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Minor,* Care and protection. *Parent and Child,* Care and protection of minor, Custody of minor. *Practice, Civil,* Care and protection proceeding, Assistance of counsel. *Conflict of Interest.*

This court affirmed an order entered by a Juvenile Court judge denying a child's motion for a new trial brought pursuant to Mass. R. Civ. P. 60 (b) (6) in which the child alleged that her court-appointed trial counsel provided her with ineffective assistance of counsel by not representing her expressed custodial preference (i.e., advocating for her return to her father's custody), where, even if the child's trial counsel had advocated against her, the child failed to demonstrate any prejudice based on the overwhelming proof of the father's unfitness. [31-35]

On a motion for a new trial in a proceeding to dispense with a father's parental rights, a child failed to show that her court-appointed counsel provided her with ineffective assistance, namely that her trial counsel represented multiple clients (the child and her sister) having conflicting interests during trial, which amounted to an actual conflict of interest, where there was no showing that the child's trial counsel's representation of either the child or her sister would have been directly adverse to the other, or that the representation of either child would have been materially limited by trial counsel's duties to the other child. [35-36]

Discussion of the obligations of trial counsel in circumstances in which counsel represents siblings of various ages, competency, and understanding; faces a care and protection or termination of parental rights case (or other proceeding in which a change of custody as a result of State intervention is contemplated or sought) that presents compelling evidence demonstrating parental unfitness and the likely risk of harm to the children if returned to the unfit parent; and one or more of the clients (the children) want counsel to advocate for return to the parent [36-45]; further, this court referred the subject to its standing committee on the rules of professional conduct for study and the formulation of suitable standards that can be expressed (in the committee's choice) in new or revised rules, commentary thereto, or guidelines derivative of the rules, and the court directed that, until the committee reports, and the court has acted, counsel should follow the 1999 standards promulgated by the Committee for Public Counsel Services [45-46].

---

[1]Care and Protection of Lucy; Adoption of Beth; and Adoption of Judith. The names of the children are pseudonyms.

PETITIONS filed in the Bristol County Division of the Juvenile Court Department on August 19, 1993.

The cases were heard by *Ronald D. Harper*, J., and motions for a new trial and to vacate the decree, dismiss the petitions, and grant custody, filed on March 28, 2000, were heard by *Mark E. Lawton*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Matthew H. Beaulieu* for Georgette & another.

*Virginia A. Peel*, Special Assistant Attorney General (*Richard A. Salcedo* with her) for Department of Social Services.

*Deborah D. Wolf* for Beth & another.

*Susan F. Drogin*, for the father, was present but did not argue.

The following submitted briefs for amici curiae:

*Leigh-Ann Patterson, Stephen W. Rider, Amy R. George, Katherine Donnelly, Denise R. Oliveira, & Stephen M. LaRose* for Massachusetts Citizens for Children.

*Andrew Hoffman*, Committee for Public Counsel Services, for Committee for Public Counsel Services.

*Jacqueline Y. Parker*, pro se.

*Jinanne S.J. Elder & Brigid Kennedy-Pfister* for The Children's Law Center of Massachusetts, Inc., & another.

GREANEY, J. These cases, tried in the Bristol Division of the Juvenile Court Department, concern (a) decrees and judgments that terminated the father's parental rights as to two daughters (Beth and Judith), and placed two other daughters (Georgette and Lucy) in the permanent custody of the Department of Social Services (department)[2]; and (b) an order denying Georgette and Lucy's motion for a new trial brought pursuant to Mass. R. Civ. P. 60 (b) (6), 365 Mass. 828 (1974) (order). The Appeals Court affirmed the decrees, judgments, and order. *Care & Protection of Georgette*, 54 Mass. App. Ct. 778, 795 (2002). We granted Georgette and Lucy's application for further appellate review solely to consider the order. The motion asserted that trial

---

[2]Three other children, Bruce, Michelle, and Rena, were originally involved in the proceedings. They have reached eighteen years of age and are no longer involved in the litigation. *Care & Protection of Georgette*, 54 Mass. App. Ct. 778, 778 n.2 (2002).

counsel appointed for the children[3] had provided Georgette and Lucy with ineffective assistance of counsel. The claim noted that some of the children had expressed different preferences concerning custody (Rena stating that she did not want to return to her father, and Georgette and Lucy stating the opposite), and that trial counsel had advocated that Georgette and Lucy not be returned to their father's custody in direct contravention of their wishes and in circumstances constituting an actual conflict of interest. We affirm the order.

1. The following preliminary considerations establish the background.

(a) The conclusions that the father has grievous shortcomings, and that his unfitness was, as the Appeals Court put it, "clearly, convincingly, and decisively established," *id.* at 781 n.4, are beyond contention. The details of the father's unfitness and the lack of merit in the attacks on the decrees and judgments are fully set forth and discussed in the opinion of the Appeals Court. *Id.* at 779-785. The factual predicates, therefore, for the entry of the decrees and the judgments are conclusively established.

(b) The decrees entered pursuant to G. L. c. 210, § 3, terminating the father's parental rights as to Beth and Judith, and thereby freeing them for adoption, are not implicated by Georgette and Lucy's motion for a new trial. In their motion, Georgette and Lucy expressly excluded Beth and Judith from the allegations that their trial counsel had been ineffective or had an actual conflict of interest. The decrees pertaining to Beth and Judith should not have been prolonged by mixing their cases with this appeal. A suitable motion to separate the decrees from the appeal should have been filed promptly in the trial court. Counsel practicing in the area must be alert to this type of situation, which can be common when litigation concerns multiple siblings, as it did here, so that vulnerable children do not incur harm as the result of unnecessarily waiting for a final determination of status.

(c) Since the release of the Appeals Court's opinion, Georgette (born on September 20, 1984), has turned eighteen years

---

[3]The children involved at the trial were Rena, Georgette, Lucy, Beth, and Judith.

of age. Because she is no longer a minor, Georgette's appeal from the order is moot, leaving Lucy (born on September 26, 1986) as the sole challenger to the order.[4] Although Lucy informed the Appeals Court that she no longer wanted her appellate counsel to act on her behalf, see *Care & Protection of Georgette, supra* at 780 n.3, she apparently instructed him to proceed with her application for further appellate review and, presumably, this appeal.

2. With these considerations noted, we now turn to the motion for a new trial. The procedural background of the motion is set forth in the opinion of the Appeals Court as follows:

"Georgette and Lucy did not appeal the March 12, 1999, order committing them to the permanent custody of [the department]. Nor did they move for a new trial within ten days of entry of the judgment thereon, pursuant to Mass. R. Civ. P. 59, 365 Mass. 827 (1974), as they could have on the issue that they then knew, or should have known, they had and of which they now complain, namely misconduct of counsel in acting for an adversary during trial (which had concluded eight months prior to the entry of the judgment) in a manner prejudicial to their interests. See Smith and Zobel, Rules Practice § 59.8 (1977). Instead, on March 28, 2000 (almost thirteen months after the judgment and twenty months after the completion of the trial), they filed (by new appellate counsel) a 'Motion for a New Trial Pursuant to Massachusetts Rules of Civil Procedure Rule 60(b)(6).' That motion was supported only by the affidavit of appellate counsel, which averred that Georgette and Lucy wanted and were entitled to have the care and protection orders with respect to them vacated and a new trial ordered on the issue of their father's unfitness because of ineffective representation by their trial attorney. That attorney (who had been appointed in 1993 to represent all five siblings) had, the motion charged, an 'actual' or 'genuine' conflict of interest arising from his trial advocacy of the father's unfitness as to all five minor

---

[4]Appellate counsel for Georgette and Lucy states in his brief that these dates of birth are wrong. Without evidence to the contrary, however, we accept the trial judge's findings on the issue. We note that Lucy testified at trial that the date of birth stated above is her date of birth, and, during oral argument, counsel all agreed that Georgette is now eighteen years old.

children before the court, in alleged direct opposition to Georgette and Lucy's claimed position that they wanted to be returned to their father's custody.

"On June 29, 2000, the second Juvenile Court judge, crediting the affidavit filed by Georgette and Lucy's trial counsel in opposition to their rule 60(b) motion, denied the motion. While indicating that the motion was probably untimely, he expressly rejected it as not involving the sort of extraordinary circumstances that such a motion is intended to address; as not presenting a meritorious claim of ineffective assistance; as subversive of the finality that children's cases require; and as productive of undue hardship and delay of the sort to be avoided in proceedings involving the State's important interest in protecting the welfare of children." (Footnotes omitted.)

*Care & Protection of Georgette, supra* at 785-786.

Georgette and Lucy's motion for a new trial presented two aspects of alleged substandard performance by their trial counsel, namely that their trial counsel (1) represented multiple clients, the children, having conflicting interests during trial, which amounted to an actual conflict of interest[5]; and (2) did not represent their expressed custodial preference, that is,

---

[5]Rule 1.7 of the Massachusetts Rules of Professional Conduct, 426 Mass. 1330 (1998), sets forth the standards for evaluating conflicts of interest as follows:

"(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

"(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

"(2) each client consents after consultation.

"(b) a lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

"(1) the lawyer reasonably believes the representation will not be adversely affected; and

"(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall

advocate for their return to their father's custody. The Appeals Court upheld the order denying the motion on several grounds, including a failure by Georgette and Lucy to demonstrate that the motion judge had "committed a clear abuse of discretion,"[6] and an improper effort to obtain relief under rule 60 (b) (6), because the "extraordinary circumstances" contemplated by the rule were not present. *Id.* at 788-790. On the point with which we are concerned — whether trial counsel for Georgette and Lucy was ineffective — the Appeals Court, *id.* at 792, applied the familiar two-part test set forth in *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). That test inquires, first, whether the "behavior of counsel [fell] measurably below that which might be expected from an ordinary fallible lawyer," and, if so, "whether [counsel's conduct] has likely deprived the defendant of an otherwise available, substantial ground of defence." *Id.* The *Saferian* test for evaluating the effectiveness of counsel is an appropriate standard to apply in care and protection proceedings. See *Care & Protection of Stephen*, 401 Mass. 144, 149 (1987). On the first part of the test, the Appeals Court expressed the view (in dicta) that trial counsel had not provided substandard representation by reason of a conflict. *Care & Protection of Georgette, supra* at 789-791. The Appeals Court, however, ultimately rested its decision that Georgette and Lucy should not obtain relief under the motion because no prejudice had been shown based on the overwhelming proof of the father's unfitness which no measure of zealous advocacy could have overcome.[7] *Id.* at 792-793. As for trial counsel's conduct of " 'advocating against [Georgette and Lucy],' taking positions

include explanation of the implications of the common representation and the advantages and risks involved."

[6]While the Appeals Court did once misstate the standard of review as requiring "clear and convincing evidence, that the judge's broad discretion was abused," *Care & Protection of Georgette, supra* at 787, it then applied the correct standard, reviewing whether "the motion judge [had] committed a clear abuse of discretion," *id.* at 788. See *Trustees of the Stigmatine Fathers, Inc.* v. *Secretary of Admin. & Fin.*, 369 Mass. 562, 565 (1976) (review of motion under Mass. R. Civ. P. 60, 365 Mass. 828 [1974], is for "clear abuse of discretion").

[7]The second part of the test in *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974), speaks of the deprivation of an otherwise available, substantial

'diametrically opposed to' theirs, and 'set[ting] himself squarely against . . . [their] goals and objectives,' " the Appeals Court stated that this "behavior . . . were it true, would be deemed misconduct under our ethical standards." *Id.* at 786 n.12.

We essentially agree with the Appeals Court's reasoning. We note that, even if Lucy's trial counsel had advocated against her,[8] she has failed to demonstrate any prejudice based on the overwhelming proof of the father's unfitness. As explained by the Appeals Court:

> "The trial judge was well aware of Georgette's and Lucy's stated (if intermittent) desires regarding their father (through testimony, presentations by their now-maligned trial counsel, and lobby conferences). Given the over-whelming evidence of the father's unfitness (as well as the clear and convincing evidence of the two girls' special problems and needs in substantial consequence thereof), which persuaded both the trial judge and the motion judge that it was not in Georgette's and Lucy's best interests to be returned to his care, it is implausible that the most zeal-ous and impassioned arguments by any trial counsel to give their custody to the alcoholic and unrepentant father who had neglected and had physically or sexually abused

ground of defense. This is criminal law terminology that does not precisely fit the context of care and protection and parental rights termination proceedings. We prefer to use the term "prejudice." Also, we agree with the Appeals Court that "[t]he premise of Georgette's and Lucy's motion, that the criteria for judging ineffectiveness of counsel in their case should be the conflict of inter-est standards adopted in the criminal representation context [under art. 12 of the Massachusetts Declaration of Rights], is mistaken." *Care & Protection of Georgette, supra* at 792 n.20. There is no State constitutional law issue involved in this case.

[8]The materials offered in support of Georgette and Lucy's motion for a new trial are silent concerning their instructions, if any, to counsel. Although hav-ing informed her trial counsel that she wished to return to her father's custody, and having testified at trial to this custodial preference, Lucy very well may have instructed her trial counsel to argue as he did, arguing for continued contact between father and daughter, but not in the form of a custodial relationship. Her instructions may have been motivated by a desire to pacify her father by appearing to agree with his desires, or by a realization that returning to his custody could have harmed her. Although the content of Lucy's instructions, and her reasons for them, is sheer speculation, the point is that the materials supporting her motion are silent on this matter.

them would have realistically accomplished any change in the result."

*Id.* at 793. The failure to show prejudice, which constituted the Appeals Court's holding on the new trial issue, is correct, and for that reason, among others, the order will be affirmed.

3. We return to the conflict allegation. We take note of a fact apparently overlooked by the motion judge (who was not the trial judge), that, in their motion for a new trial, Georgette and Lucy did not expressly state (and, in fact, expressly excluded) any conflict of interest claims concerning trial counsel's joint representation of them along with Beth and Judith. Thus, Georgette and Lucy's conflict claim rests on their trial counsel's representation of them with Rena. While Georgette and Lucy's appellate counsel's affidavit in support of the motion for a new trial, correctly states that, "[a]t the time of trial, the eldest child [Rena] did not wish to return to her father," what the affidavit omits is that custody of Rena was not contested at trial. Rena had decided to remain in foster care, and the father's trial counsel had informed the judge that the father was not challenging Rena's custody with the department. This fact is reflected in the judge's findings. Because Rena's custody was not a disputed issue, Lucy has not demonstrated that her trial counsel's joint representation of her and Rena presented an actual conflict.[9] Cf. *Commonwealth* v. *Michel*, 381 Mass. 447, 451-452 (1980) (no automatic conflict of interest arises with joint representation); *Commonwealth* v. *Soffen*, 377 Mass. 433, 437 (1979) (burden lies with person alleging conflict to prove its existence and precise character). Stated differently, there is no showing that Lucy's trial counsel's representation of either

---

[9]Conflicts of interest arising from the representation of multiple siblings in State child intervention proceedings can be quite complex. See Moore, Conflicts of Interest in the Representation of Children, 64 Fordham L. Rev. 1819, 1831-1835 (1996) (discussing conflict analysis, and how that analysis may become complicated where one or more of the clients is a child). Although the Appeals Court stated that it was "reliably informed that in care and protection and adoption cases involving multiple siblings, it is now common for judges of the Juvenile Court to appoint a different attorney to represent each child," *Care & Protection of Georgette*, *supra* at 790 n.16, the Committee for Public Counsel Services (CPCS) states that the Appeals Court's statement of current practice is "inaccurate."

Lucy or Rena would be "directly adverse" to the other, or that the representation of either child would be "materially limited" by trial counsel's duties to the other child. Mass. R. Prof. C. 1.7 (a). Ineffective assistance of counsel has not been shown on this point alone.

4. This leaves the larger issue: what are the obligations of trial counsel in circumstances such as the present when counsel represents siblings of various ages, competency, and understanding; faces a care and protection or termination of parental rights case (or other proceeding in which a change of custody as a result of State intervention is contemplated or sought) that presents compelling evidence demonstrating parental unfitness and the likely risk of harm to the children if returned to the unfit parent; and one or more of the clients (the children) want counsel to advocate for return to the parent. There is no question that the children are entitled to counsel, that their autonomy and rights to be heard on issues affecting their interest should be respected, and that their positions, based on mature expression, are entitled to weight in custody proceedings (although not determinative). See *Custody of a Minor*, 383 Mass. 595, 602 (1981); *Adoption of Arthur*, 34 Mass. App. Ct. 914, 915 (1993). Nonetheless, we have noted that, "[e]ven where it is undisputed that a child and her attorney disagree, the law is unclear as to whether the attorney is always bound by her minor client's decision when the attorney feels that the child's decision is not in her own best interests." *Adoption of Erica*, 426 Mass. 55, 63-64 n.9 (1997). In that decision, we felt "particularly hesitant to conclude that a difference of opinion between what a young child . . . expresses as her wish and the position of her attorney necessarily suggests a conflict of interest." *Id*. We also pointed out that "[t]he notion that an attorney might zealously advocate for a result opposed by the client clearly sets the representation of children apart from the normal context in which attorneys operate." *Id*., quoting Wu, Conflicts of Interest in the Representation of Children In Dependency Cases, 64 Fordham L. Rev. 1857, 1861 (1996).

The issue creates serious problems: tension as to trial

counsel's ethical duties[10]; doubt on what counsel should do when a client (or clients) lacks maturity, understanding, or competence; and concern about when to request intervention by the judge, perhaps to ask for appointment of a guardian ad litem or other independent examiner (and how to preserve client confidences in the process). This description of problems is by no means exhaustive. The issue also raises challenges for the judge: should the judge press counsel to explain the problem; should new counsel be appointed for some children based on disagreement between them and counsel (thereby necessitating delay[11]), cf. *Adoption of Erica, supra* at 65 ("any attempt to disqualify an attorney is especially troublesome in a case that involves the resolution of a child's future family life"); should the judge examine the children in camera; is a guardian ad litem necessary; and where, in a time of shrinking resources and budgets, does the judge find funds to provide the necessary assistance. Again, this list of problems is not exhaustive.

When an attorney may deviate from seeking the objectives of a minor client has been the subject of considerable comment and the expression of various standards. Under the Massachusetts Rules of Professional Conduct, which became effective on January 1, 1998, a few months before this trial, a lawyer is obligated to, "as far as reasonably possible, maintain a normal client-lawyer relationship with the client" even when the "client's ability to make adequately considered decisions in connection with the representation is impaired, whether because

[10]The Massachusetts Rules of Professional Conduct impose many duties on counsel, including duties to provide competent representation, Mass. R. Prof. C. 1.1, 426 Mass. 1308 (1998); to seek the lawful objectives of the client, Mass. R. Prof. C. 1.2, 426 Mass. 1310 (1998); to act diligently, Mass. R. Prof. C. 1.3, 426 Mass. 1313 (1998); to represent a client zealously, *id.*; to maintain communications with and advise the client, Mass. R. Prof. C. 1.4, 426 Mass. 1314 (1998); and to maintain client confidences, Mass. R. Prof. C. 1.6, 426 Mass. 1322 (1998).

[11]Even though these cases involved no attempt to change counsel, the proceedings were prolonged and the hearings consumed all, or part of, fourteen days over two months. We have expressed concern on the length of proceedings which involve the needs of vulnerable children. The matter is under active study by our committee on delay in child custody hearings, and we hope for the adoption of recommendations and procedures, as soon as feasible, that will expedite the resolution of these cases.

of minority, mental disability, or for some other reason." Mass. R. Prof. C. 1.14 (a), 426 Mass. 1361 (1998). Departure from the "normal client-lawyer relationship" is permitted by our rule when "a lawyer reasonably believes that a client has become incompetent or that a normal client-lawyer relationship cannot be maintained . . . because the client lacks sufficient capacity to communicate or to make adequately considered decisions in connection with the representation, and if the lawyer reasonably believes that the client is at risk of substantial harm, physical, mental, financial, or otherwise." Mass. R. Prof. C. 1.14 (b), 426 Mass. 1361 (1998). When either of these circumstances is present, "[T]he lawyer may take the following action. The lawyer may consult family members, adult protective agencies, or other individuals or entities that have authority to protect the client, and, if it reasonably appears necessary, the lawyer may seek the appointment of a guardian ad litem, conservator, or a guardian, as the case may be. The lawyer may consult only those individuals or entities reasonably necessary to protect the client's interests and may not consult any individual or entity that the lawyer believes, after reasonable inquiry, will act in a fashion adverse to the interests of the client. In taking any of these actions the lawyer may disclose confidential information of the client only to the extent necessary to protect the client's interests." *Id.*

The Committee for Public Counsel Services (CPCS) has, under G. L. c. 211D, § 9, promulgated performance standards that apply to appointed counsel in State intervention cases. The standards in effect at the time of this trial were adopted by CPCS apparently in 1993. The standards stated the role of counsel in the following terms: "If the child is of sufficient age and ability to formulate an informed position of his/her own, the role of counsel is to advocate that position." Standard 1 of the CPCS Performance Standards Governing Representation of Children in State Intervention and Parental Rights Termination Cases. The standards allowed an attorney to advocate the "best interests" of the child to the court only when the child was unable to make an informed judgment. See *id.*, citing Mas-

sachusetts Bar Association (MBA) Committee on Professional Ethics, Opinion No. 76-1 (1976), which is summarized below.[12] In 1993, the MBA Committee on Professional Ethics issued an opinion expressly modifying the advice given in the earlier opinion. MBA Committee on Professional Ethics, Opinion No. 93-6 (1993). A summary of the revised opinion is set forth below.[13]

CPCS altered its standards in 1999.[14] The new standards provide (excluding commentary):

> "(a) Child's counsel should elicit the child's preferences in a developmentally appropriate manner, advise the child and provide guidance.

---

[12]This opinion states, after analyzing certain provisions of our former Code of Professional Responsibility, that a lawyer representing a child in need of services who "is unable to make an informed judgment as to what is in his or her own best interest," has "an obligation to the child to advocate to the court that disposition of the case which the lawyer believes to be in the best interests of the child, even if such disposition of the case is not consistent with the expressed wishes of the child. In any such case, however, we believe the lawyer should inform the court of the contrary views of the child on the matter, and should state his or her own reasons for believing that the disposition of the case desired by the child is not in the best interests of the child."

[13]The revised opinion states:

> "Where a minor client instructs her lawyer to pursue a course of action in a care and protection proceeding which is not in accordance with the opinion of the lawyer and other professionals as to what is in the minor's best interests, the lawyer must follow the minor client's direction unless he determines that she is incapable of making a considered judgment on her own behalf, and therefore 'incompetent.' If the lawyer believes his client to be competent but he is unable to zealously represent his client's stated position, the lawyer may also attempt to withdraw from the representation. If the lawyer determines that the client's lack of maturity reaches a level of 'incompetence,' he may make some decisions on behalf of the client. The lawyer should make these decisions, however, on the basis of what the child would desire if she were competent to understand her options and express her wishes. Alternatively, a lawyer may seek the appointment of a guardian ad litem for the child but should first discuss the appointment with the child."

[14]It appears that Lucy's trial counsel acted in accordance with the professional rules and the CPCS standards then in effect. The applicable professional rule, Mass. R. Prof. C. 1.14, 426 Mass. 1361 (1998), does not preclude the actions endorsed by the CPCS standards.

"(b) If counsel reasonably determines that the child is able to make an adequately considered decision with respect to a matter in connection with the representation, counsel shall represent the child's expressed preferences regarding that matter.

"(c) If a child client is incapable of verbalizing a preference, counsel shall make a good faith effort to determine the child's wishes and represent the child in accordance with that determination or may request appointment of a guardian ad litem/next friend to direct counsel in the representation.

"(d) If a child can verbalize a preference with respect to a particular matter, but counsel reasonably determines, pursuant to paragraph (b) above, that the child is not able to make an adequately considered decision regarding the matter and if representing the child's expressed preferences does not place the child at risk of substantial harm, then counsel shall represent the child's expressed preferences.

"If the child is *not* able to make an adequately considered decision regarding the matter *and* if counsel determines that pursuing the child's expressed preferences would place the child at risk of substantial harm, counsel may choose one of the following options:

"(i) represent the child's expressed preferences regarding the matter;

"(ii) represent the child's expressed preferences and request the appointment of a guardian ad litem/investigator to make an independent recommendation to the court with respect to the best interests of the child;

"(iii) inform the court of the child's expressed preferences and request the appointment of a guardian ad litem/ next friend to direct counsel in the representation; or

"(iv) inform the court of the child's expressed preferences and determine what the child's preferences would be if he or she was able to make an adequately considered

decision regarding the matter and represent the child in accordance with that determination" (emphasis in original).

CPCS Assigned Counsel Manual, Standard 1.6 of the Performance Standards Governing the Representation of Children and Parents in Child Welfare Cases (1999) (1999 CPCS Standards).

On the national level, there are various advisory standards, including the American Bar Association (ABA) Standards of Practice for Lawyers Who Represent Children in Abuse and Neglect Cases (1996) (ABA Standards),[15] and the standards articulated by the American Law Institute in the Restatement (Third) of the Law Governing Lawyers § 24 (2000).[16] The

---

[15]The applicable standards for the American Bar Association (ABA) provide (excluding commentary):

> "B-4. Client Preferences. The child's attorney should elicit the child's preferences in a developmentally appropriate manner, advise the child, and provide guidance. The child's attorney should represent the child's expressed preferences and follow the child's direction throughout the course of litigation.

> "(1) To the extent that a child cannot express a preference, the child's attorney shall make a good faith effort to determine the child's wishes and advocate accordingly or request appointment of a guardian ad litem.

> "(2) To the extent that a child does not or will not express a preference about particular issues, the child's attorney should determine and advocate the child's legal interests.

> "(3) If the child's attorney determines that the child's expressed preference would be seriously injurious to the child (as opposed to merely being contrary to the lawyer's opinion of what would be in the child's interests), the lawyer may request appointment of a separate guardian ad litem and continue to represent the child's expressed preference, unless the child's position is prohibited by law or without any factual foundation. The child's attorney shall not reveal the basis of the request for appointment of a guardian ad litem which would compromise the child's position."

ABA Standards of Practice for Lawyers Who Represent Children in Abuse and Neglect Cases, Part I, B-4 (1996).

[16]Section 24 of the Restatement (Third) of Law Governing Lawyers (2000) provides:

> "(1) When a client's capacity to make adequately considered decisions in connection with the representation is diminished, whether

National Association of Counsel for Children (NACC) provides an overview of various standards, or so-called models of representation, and with respect to the ABA Standards, has "carved out a significant exception" to ABA Standard B-4, see note 15, *supra*, "where the client cannot meaningfully participate in the formulation of his or her position." NACC Recommendations for Representation of Children in Abuse and Neglect Cases 289-294 (2001) (NACC Standards). In such cases, the NACC's exception "calls for a GAL [guardian ad litem] type judgment using objective criteria. Additionally, the NACC's version *requires* the attorney to request the appointment of a separate GAL, after unsuccessful attempts at counseling the child, when the child's wishes are considered to be seriously injurious to the child" (emphasis in original). *Id.* at 294.

Additionally, in December, 1995, Fordham University School

because of minority . . . or other cause, the lawyer must, as far as reasonably possible, maintain a normal client-lawyer relationship with the client and act in the best interests of the client as stated in Subsection (2).

"(2) A lawyer representing a client with diminished capacity . . . and for whom no guardian or other representative is available to act, must, with respect to a matter within the scope of the representation, pursue the lawyer's reasonable view of the client's objectives or interests as the client would define them if able to make adequately considered decisions on the matter, even if the client expresses no wishes or gives contrary instructions.

"(3) If a client with diminished capacity . . . has a guardian or other person legally entitled to act for the client, the client's lawyer must treat that person as entitled to act with respect to the client's interests in the matter, unless:

"(a) the lawyer represents the client in a matter against the interests of that person; or

"(b) that person instructs the lawyer to act in a manner that the lawyer knows will violate the person's legal duties toward the client.

"(4) A lawyer representing a client with diminished capacity . . . may seek the appointment of a guardian or take other protective action within the scope of the representation when doing so is practical and will advance the client's objectives or interests as stated in Subsection (2)."

of Law hosted a conference on ethical issues in the legal representation of children and published various recommendations of the conference's working groups, which we shall refer to as the Fordham Recommendations. Green, Foreword: Children and the Ethical Practice of Law, 64 Fordham L. Rev. 1281, 1283 (1996). The Fordham Recommendations provide that "[a] lawyer appointed or retained to serve a child in a legal proceeding should serve as the child's lawyer. The lawyer should assume the obligations of a lawyer, regardless of how the lawyer's role is labelled, be it as guardian ad litem, attorney ad litem, law guardian, or other. The lawyer should not serve as the child's guardian ad litem or in another role insofar as the role includes responsibilities inconsistent with those of a lawyer for the child." Recommendations of the Conference on Ethical Issues in the Legal Representation of Children, 64 Fordham L. Rev. 1301, 1301 (1996). In circumstances where a child lacks capacity to direct the representation, the Fordham Recommendations contain standards that "limit the permissible discretion that lawyers for children may exercise on behalf of their clients"; suggest that lawyers for children employ a process that identifies the child's "legal interest," which "begins and ends with [an analysis of] the child-in-context"; and requires lawyers for children to present evidence in court on all of the options existing for the child. *Id.* at 1308-1311.

Finally, standards have been articulated in Guidelines for Public Policy and State Legislation Governing Permanence for Children from Adoption 2002: The President's Initiative on Adoption and Foster Care (rev. 2001) (President's Initiative Guidelines). Those guidelines provide, as far as relevant here, that (1) "[i]f a child lacks capacity to articulate a preference, the attorney should determine and advocate the child's legal interests," and (2) "[i]f the child's attorney not only believes that the child's expressed preferences are contrary to his/her opinion of the child's best interests, but also could place the child at considerable risk of severe injury or harm, the lawyer may request appointment of a separate guardian ad litem. In this case, the attorney would continue to represent the child's expressed preference, unless the child's position is prohibited by law or without any factual foundation. The child's attorney

shall not reveal the basis of the request for appointment of a guardian ad litem that would compromise the child's position." Guideline VII-15A of the President's Initiative Guidelines.

These various expressions have met with criticism. For example, in commentary to standard 1.6 of the 1999 CPCS Standards, CPCS criticizes our rules of professional conduct, stating that the rules only provide "some limited guidance." The Children's Law Center of Massachusetts, Inc., rejects several approaches reflected in the 1999 CPCS Standards, specifically, standard 1.6. The Massachusetts Citizens for Children recommends the adoption of an approach similar to that enacted by statute in Michigan that has been explained as follows:

> "The Michigan statute codifies two roles for the child's legal advocate—a client-directed *attorney* role and a best interests *lawyer-guardian ad litem* role. The statute . . . requires appointment of a lawyer-GAL in every child protection case, but permits the court to appoint an attorney for the child, in addition to the lawyer-GAL, where the child and lawyer-GAL are in conflict about identification of the child's interests. The statute also establishes aggressive duties for the lawyer-GAL, provides for attorney-client privilege, requires the lawyer-GAL to present the wishes of the child even if inconsistent with the lawyer-GAL's views of best interests, and requires the lawyer-GAL to weigh the child's wishes in making the best interests determination according to the age and maturity of the child." (Footnote omitted.) (Emphasis in original.)

Duquette, Legal Representation for Children in Protection Proceedings: Two Distinct Lawyer Roles Are Required, 34 Fam. L.Q. 441, 444-445 (2000) (Duquette). See Mich. Comp. Laws Ann. § 712A.13a (1) (b), § 712A.17d (1) (West 1998). The same author also criticizes the ABA Standards, NACC Standards, and Fordham Recommendations, pointing out that these models "actually contain within themselves serious opportunities for lawyers to exercise unfettered and unreviewed discretion in representing children." Duquette, *supra* at 444. In summary:

> "There is considerable ongoing discussion among

lawyers, judges, and other children's advocates about the appropriate role for a lawyer to assume when representing child clients. In particular, a range of views exist about the extent to which lawyers should take direction from their child clients. For the most part, States have provided inadequate guidance to lawyers for children about their proper role and, as a result, each lawyer makes her or his own decision. This ad hoc approach produces confusion among clients, other involved individuals, and the courts. It also has the effect, overall, of reducing the quality of legal representation. In order for children to be well served by the court process, it is essential that each State clearly articulate the role the child's lawyer is expected to play."

Commentary to guideline VII-14 of the President's Initiative Guidelines.

5. We are persuaded from the array of conflicting standards that the subject needs clarification. Without expression of views by those involved in these cases, we are reluctant to pick one set of standards over another (or to formulate guidelines from a mixture of standards). We conclude that the matter is best resolved, as recommended by the department, by reference to our standing advisory committee on the rules of professional conduct for the committee's study and the formulation of suitable standards which can be expressed (in the committee's choice) in new or revised rules, commentary thereto, or guidelines derivative of the rules. The committee should, among other sources, review the briefs in these cases, existing standards (both local and national), and scholarly publications in the field. Additionally, the views of interested parties should be solicited, including those of the department, CPCS, other lawyers who practice in intervention cases, relevant organizations, and judges and staff members who handle the cases. Until the committee reports, and we have acted, counsel should follow the 1999 CPCS Standards. Those standards are consistent with rule 1.14 in that deviation from the normal attorney-client relationship is permitted only in limited circumstances, when the child is "incapable of verbalizing a preference," or incapable of making "an adequately considered decision" and counsel determines that the child's expressed preference places the child

"at risk of substantial harm." Standard 1.6 (c) and (d) of the 1999 CPCS Standards. In both circumstances, the standards permit counsel to substitute judgment for the child, a subjective determination that most closely resembles a normal attorney-client relationship. See *id.* The standards protect those children falling into the latter category, those able to verbalize a preference although incapable of making "an adequately considered decision," by requiring counsel who renders a substituted judgment to "inform the court of the child's expressed preferences." *Id.* at standard 1.6 (d)(iv). The standards also permit counsel to request the appointment of a guardian ad litem, *id.* at standard 1.6 (c) and (d)(ii), (iii), a further measure of protection for the child.

6. The order denying Georgette and Lucy's motion for a new trial is affirmed.

*So ordered.*