NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-801                                        Appeals Court

ADOPTION OF UDAY.[1]


No. 16-P-801.

Middlesex.    January 5, 2017. - February 16, 2017.

Present:  Carhart, Massing, & Lemire, JJ.


Adoption, Dispensing with parent's consent.  Minor, Adoption.
    Parent and Child, Adoption, Dispensing with parent's
    consent to adoption.  Indian Child Welfare Act.  Practice,
    Civil, Adoption, Assistance of counsel.


Petition filed in the Middlesex County Division of the
Juvenile Court Department on May 9, 2013.

    The case was heard by Kenneth J. King, J.


    Daniel R. Katz for the father.
    Kari B. Kipf Horstmann for Department of Children and
Families.
    Amy S. DiDonna for the child.


    MASSING, J.  The father appeals from a decree terminating

his parental rights with respect to his son, Uday.[2]  He argues

_____

    [1] A pseudonym.

that the Department of Children and Families (department) did
not comply with the notice requirements of the Indian Child
Welfare Act (ICWA), 25 U.S.C. § 1912(a) (2012), that the
department's failure to make reasonable efforts to reunite him
with the child vitiates the judge's finding of parental
unfitness, and that the finding of unfitness is unsupported in
any event.  We affirm.

1.  ICWA notice.  The father contends that despite the
department's knowledge of Uday's possible Cherokee ancestry, it
failed to "notify the . . . Indian child's tribe . . . of the
pending [termination] proceedings."  25 U.S.C. § 1912(a).  He
also claims that his attorney was ineffective for failing to
assert an ICWA claim during the proceedings in the Juvenile
Court.

We permitted the department to file a supplemental record
appendix in which the department submitted letters from the
three federally recognized Cherokee tribes -- the Cherokee
Nation, the United Keetoowah Band of Cherokee Indians in
Oklahoma, and the Eastern Band of Cherokee Indians -- all to the
effect that Uday does not qualify as an "Indian child" under 25

---

[2] The mother did not oppose the removal of the child and did
not appeal from the termination of her parental rights.

U.S.C. § 1903(4) (2012).[3]  See Indian Entities Recognized and Eligible To Receive Services from the United States Bureau of Indian Affairs, 78 Fed. Reg. 26,384, 26,385, 26,388 (2013) (listing tribal entities recognized as "Indian tribes" under 25 U.S.C. § 1903[4] and which must be notified of involuntary custody proceedings in which Indian child is involved).  These responsive letters from the three Cherokee tribes demonstrate that the department in fact did comply with ICWA notice provision.

While any ICWA claim the father or child may have had fails in this instance -- and any claim of ineffective assistance of counsel in this regard is likewise doomed to failure -- we note that the Department of the Interior recently added "a new Subpart I to 25 CFR part 23 to address ICWA implementation by State courts."  Indian Child Welfare Act Proceedings, 81 Fed. Reg. 38,778, 38,779 (2016).  As part of the new Federal regulations, effective as of December 12, 2016, "When a court knows or has reason to know that the subject of an involuntary foster-care-placement or termination-of-parental-rights proceeding is an Indian child, the court must ensure that . . .

---

[3] The letters are dated within three months of a court investigator's report first noting Uday's possible Cherokee ancestry and well over one year before the best interests trial. See 25 U.S.C. § 1912(a) ("No . . . termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent . . . and the tribe").

[a]n original or a copy of each notice sent under this section is filed with the court together with any return receipts or other proof of service." 25 C.F.R. § 23.111(a)(2). See Indian Child Welfare Act Proceedings, supra at 38,811, quoting from In re E.S., 92 Wash. App. 762, 773 (1998) ("'filing of proof of service in the trial court's file would be the most efficient way of meeting [the] burden of proof' in proving notice").

Thus, in the future, documentation of compliance with ICWA is to be included in the trial court record.

2. Termination of parental rights. a. The department's reasonable efforts. The father argues that the department's failure to make reasonable efforts "to reunify [the] father with his son" undermines the judge's finding of unfitness. We disagree.

"Before seeking to terminate parental rights, the department must make 'reasonable efforts' aimed at restoring the child to the care of the natural parents." Adoption of Ilona, 459 Mass. 53, 60 (2011) (quotation omitted). This duty "includes a requirement that the department provide services that accommodate the special needs of a parent." Id. at 61. "However, even where the department has failed to meet this obligation, a trial judge must still rule in the child's best interest." Ibid.

In his findings, the judge noted that the father suffered a traumatic brain injury as a teenager and has received Social Security disability benefits because of this injury.  The judge was critical of the department for being "remarkably incurious about the nature and extent of the disability" and doing "little to explore his injury or to tailor services to meet any particular needs that he has as a result of this injury."  The department's failure even to obtain the father's medical records was, in the judge's view, "utterly nonsensical."  However, the judge also noted that "[t]he responsibility for this circumstance does not fall on the [department] alone," and furthermore, that "no issue was raised [by the father] about the adequacy of the [department's] service efforts . . . prior to the trial."[4]  See Adoption of Gregory, 434 Mass. 117, 124 (2001)

---

[4] The judge raised the issue of the adequacy of the department's efforts sua sponte, noting that "this issue is not addressed in the proposed findings and rulings filed on behalf of [the father].  In this posture, although this judge is very troubled by the [department's] failure to take a hard look at [the father's] disability or to seek to accommodate his disability in the provision of services to him, the issue has not [been] actively litigated or framed for review."

The judge nonetheless carefully considered the issue.  On the record before us, the claim that counsel was ineffective for failing to move for a continuance to obtain a neuropsychological examination or for failing to obtain certain medical records -- raised for the first time on appeal, see Care & Protection of Stephen, 401 Mass. 144, 150 (1987) ("[a]bsent exceptional circumstances, we do not review claims of ineffective assistance of counsel for the first time on appeal"), fails for want of a

("[A] parent must raise a claim of inadequate services in a timely manner so that reasonable accommodations may be made").

"A determination by the court that reasonable efforts were not made shall not preclude the court from making any appropriate order conducive to the child's best interest." G. L. c. 119, § 29C, as appearing in St. 2008, c. 176, § 87. The judge properly prioritized the "welfare of the child," Adoption of Gregory, supra at 121, and found that Uday was "in need of stability, consistency, and permanence," which the father could not provide. The judge did not abuse his discretion in determining that termination of the father's parental rights was in the child's best interests, notwithstanding the department's shortcomings.

b. Finding of unfitness. The judge's factual findings, which the father does not claim are erroneous, demonstrate clear and convincing evidence of the father's current unfitness and the likelihood that his unfitness will continue indefinitely. See Care & Protection of Vick, 89 Mass. App. Ct. 704, 706 (2016). "Parental unfitness is determined by considering a parent's character, temperament, conduct, and capacity to provide for the child's particular needs, affections, and age." Ibid.

---

showing of prejudice. See Care & Protection of Georgette, 439 Mass. 28, 33-34 (2003).

The judge found that the father has a "nearly twenty year history of serious, violent, criminal misconduct," including at least six incidents of physical violence between the mother and father where Uday was present. Despite his "violent propensities," the father has refused the department's proposed "treatment [to] mitigate[] the risk posed by his violent tendencies," such as participating in domestic violence education. The judge appropriately considered the father's past behavior, see Adoption of George, 27 Mass. App. Ct. 265, 268 (1989), and refusal to accept domestic violence education, see Adoption of Mario, 43 Mass. App. Ct. 767, 774 (1997), as evidence of unfitness.

The judge also found that the child "has been diagnosed with [posttraumatic stress disorder] and reactive attachment disorder." He exhibited "aggressive and troubled behavior" in previous placements, including "smearing feces, indifference to toilet training, tantruming, and assaults on other children in the foster homes." The judge concluded that the father's "record of violent, assaultive behavior, as well as his lack of treatment for such behavior supports the conclusion that he is unable to provide [Uday] with the patient, consistent, nurturing care that he requires," and found the father unfit to parent Uday.

The judge's findings demonstrated "that close attention was given to the evidence," Care & Protection of Vick, supra at 709, quoting from Adoption of Helen, 429 Mass. 856, 859 (1999), and set forth clear and convincing evidence that the father had "'grievous shortcomings or handicaps' that put the child's welfare 'much at hazard.'" Adoption of Katharine, 42 Mass. App. Ct. 25, 28 (1997), quoting from Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption, 367 Mass. 631, 646 (1975).

Decree affirmed.