NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-742

ADOPTION OF ZANDRA.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In this consolidated appeal, the father appeals from (1) the decree of a Juvenile Court judge finding him unfit, terminating his parental rights to his daughter Zandra (Zandra or the child), and approving the plan for Zandra's adoption by her foster parents; and (2) the denial by a single justice of this court of his request for a stay of this appeal so that he could file a motion for relief from the judgment in the trial court on the ground of ineffective assistance of counsel.  We affirm.

Background.  We summarize the Juvenile Court judge's findings of fact, which the father does not challenge, supplemented by uncontested evidence from the record.

_____

[1] The child's name is a pseudonym.

The Department of Children and Families (department) took emergency custody of Zandra in July 2017, one day after she was born. The mother regained conditional custody the next day, but the department removed the child from her mother's care again in September 2017, following multiple G. L. c. 119, § 51A, reports of neglect. The department placed the child with her current preadoptive family when she was roughly two months old. At the time of trial, the child was six years old. She lived with her younger half-sister and regularly visited with two siblings living in other homes. Diagnosed with autism spectrum disorder, she received fifteen hours of therapy per week at home.

Including Zandra, the father had eleven children at the time of trial, several of whom had been in State custody for parts or all of their childhoods. He had been the defendant on at least nine abuse prevention complaints brought under G. L. c. 209A by three of the mothers of his children. Two other mothers, including Zandra's mother, had accused him of domestic violence without seeking abuse prevention orders. At trial, the father argued that these orders and allegations were all the product of jealous retaliation and denied any history of or issues with domestic violence. The judge declined to credit his testimony on these matters.

The father attended visits with Zandra only sporadically. Since 2019, the father has visited in person with the child only

2

twice, due in part to the COVID-19 pandemic and in part to the father's relocation to Georgia to care for an ailing family member.  Given his frequent lateness to and inconsistent attendance at scheduled visits, the department switched the father to virtual visits on a permanent basis in 2021.  From April 2021 to June 2023, the father attended just one of twenty-two scheduled virtual visits with Zandra.  He failed to confirm sixteen of those visits, and he confirmed but did not attend five.

Testifying at trial, the father suggested that if he had custody of Zandra, she would live in Georgia while he worked in New Hampshire; however, he did not identify a primary address in either State or provide information as to who would care for the child in Georgia in his absence.  He had limited parenting experience, he did not demonstrate an interest in or awareness of the challenges or best practices in caring for a child with autism, and he did not indicate what steps he might take to learn how to care for Zandra's specific needs.[2]

Following a two-day trial, the judge found both parents unfit and determined it was in Zandra's best interests to

---

[2] The judge did not credit the father's testimony that he had experience caring for a child with autism and an understanding of Zandra's special needs.

terminate their parental rights.[3]  Following the judgment, the father filed a motion to stay appellate proceedings in order to return to the Juvenile Court to seek relief from judgment under Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974), arguing he had received ineffective assistance of trial counsel.  A single justice of this court denied the father's motion.

Discussion.  "A parent facing termination of parental rights is entitled to the effective assistance of counsel." Adoption of Ulrich, 94 Mass. App. Ct. 668, 672 (2019).  "A claim of ineffective assistance in the context of care and protection proceedings is considered under the standards applicable to judging the effectiveness of counsel's assistance in criminal cases."  Adoption of Yvette (No. 1), 71 Mass. App. Ct. 327, 345 (2008).  In reviewing such a claim, we conduct "a discerning examination and appraisal of the specific circumstances of the given case to see whether there has been serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer."  Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).  We do not disturb a judgment merely because counsel could have performed better; we hold attorneys to a "practical" standard, not an aspirational one.  Id. at 98.

---

[3] The mother did not appeal.

4

"Counsel may strive for perfection, but only competence or the avoidance of a 'serious incompetency' is required." Commonwealth v. Kolenovic, 471 Mass. 664, 674 (2015), quoting Commonwealth v. Walker, 443 Mass. 213, 225 (2005).

1. Performance standards. The father contends his trial attorney failed to provide effective assistance because she did not comply with the performance standards issued by the Committee for Public Counsel Services (CPCS) in its Appointed Counsel Manual governing the representation of children and parents in child welfare cases. "In determining the level of performance required of an ordinary fallible lawyer, we look to the 'professional standards of the legal community.'" Commonwealth v. Lavrinenko, 473 Mass. 42, 51 (2015), quoting Commonwealth v. Clarke, 460 Mass. 30, 45 (2011). However, the courts do not treat professional standards and guidelines such as the CPCS manual as definitive. "Prevailing norms of practice as reflected in American Bar Association standards and the like . . . are guides to determining what is reasonable, but they are only guides." Strickland v. Washington, 466 U.S. 668, 688 (1984). Although the CPCS standards may offer guidance as to what constitutes competent performance in the Massachusetts legal community, we decline the father's invitation to apply these standards wholesale or otherwise treat the manual as a "checklist." Id.; Saferian, 366 Mass. at 99. Compliance or

5

noncompliance with the defined standards may serve as evidence of counsel's effectiveness, but neither is dispositive.

2. _Trial counsel's performance and prejudice_. The father's trial attorney was appointed March 2, 2023, slightly less than four months before trial commenced on June 28, 2023. She was the father's fifth appointed attorney since proceedings began in August 2018.[4] The father argues trial counsel fell short in a variety of ways, including by failing to communicate with him prior to trial, failing to pursue motions in limine and discovery, failing to call witnesses and present evidence as the father suggested, and failing to pursue the father's objective of securing in-person visitation with the child.

With respect to the allegation that counsel failed to communicate with him, the trial attorney stated in her affidavit that she mailed an introductory letter to the father shortly after being appointed to represent him, on or around March 14, 2023. The father denied receiving any such letter, but given his admitted inconsistency in maintaining an address, we cannot conclude that any lapses in communication were the fault of trial counsel.

---

[4] Although the father does not address the withdrawals from representation of the first three attorneys, he explains the fourth attorney withdrew because the father was dissatisfied with his representation.

6

With respect to counsel's conduct at trial, "tactical or strategic decisions" are generally left to the expertise of the trial attorney.  Kolenovic, 471 Mass. at 673, quoting Commonwealth v. Valentin, 470 Mass. 186, 190 (2014).  When such decisions form the basis of a claim of ineffective assistance of counsel, we review them only to determine "whether the decision was manifestly unreasonable when made" (quotations and citation omitted).  Kolenovic, supra at 674.  "[T]aking into account all the circumstances known or that should have been known to counsel" during trial, id., trial counsel's strategic decisions do not strike us as incompetent.

For example, the father alleges that counsel failed to call his wife, from whom he had been separated since 2008, as a witness to testify that she obtained abuse prevention orders against him in jealous retaliation.  Particularly where a parent's relationship with a witness has been tumultuous, it is not manifestly unreasonable for a trial attorney to decline to call that witness "to avoid the risk that the department or counsel for the children might elicit testimony from her on cross-examination that would be damaging."  Adoption of Ulrich, 94 Mass. App. Ct. at 674 (counsel not ineffective for failing to call witness who had previously obtained abuse prevention order against parent).

But in any event, we need not look too closely at counsel's conduct because the father has failed to demonstrate that he suffered any prejudice.  Even if counsel failed to perform the tasks set out in the CPCS manual, such failure alone does not require a new trial:  "prejudice must be shown in a claim for ineffective assistance of counsel."  Commonwealth v. LaChance, 469 Mass. 854, 860 (2014).  The father simply fails to demonstrate how trial counsel's alleged failures "had any bearing on the result of the trial."  Adoption of Ulrich, 94 Mass. App. Ct. at 675.

For example, even if we agreed with the father that counsel should have called his wife as a witness, the failure to do so did not result in prejudice.  The father had been the defendant on restraining orders filed by two other partners and was accused of violent behavior by two more.  The father's wife was far from a "critical witness" regarding his history of domestic violence, Adoption of Ulrich, 94 Mass. App. Ct. at 674, much less on his current ability to care for the child.  Even if the trial judge had credited the wife's recantation of her allegations against the father, such testimony had no reasonable probability of affecting the outcome of the trial.

We come to a similar conclusion as to the attorney's decision not to present photographs of the father's home in Georgia to demonstrate its suitability for the child.  The

8

father was unprepared in multiple respects to care for the child, in Georgia or elsewhere. Especially considering that the father did not identify the Georgia home as his primary residence, and more importantly, that he did not explain who would care for the child if she lived in Georgia while he continued working in New Hampshire, the condition of the home was likely of little importance to the judge's ultimate determination of unfitness.

Nor would taking appropriate steps to secure the father in-person visitation with the child have likely affected the outcome, which must be shown to demonstrate ineffective assistance. The attorney stated in her affidavit that she contacted the department to request in-person visitation on June 16, 2023. She did not, however, as the father correctly notes, file a motion seeking to compel the department to provide such visits. But on this point, too, the case against the father was overwhelming: his history of inconsistent attendance at scheduled visits had resulted in the permanent switch to virtual visitation in 2021. As the father conceded, the department had clearly communicated to him that in order to return to in-person visitation with the child, he had to confirm and attend three virtual visits in a row. The father had been unable to fulfill this requirement. "It is not ineffective assistance of counsel when trial counsel declines to file a motion with a minimal

chance of success." Commonwealth v. Conceicao, 388 Mass. 255, 264 (1983). Since the father himself could not demonstrate genuine pursuit of in-person visitation, any such effort by trial counsel is unlikely to have succeeded. In any event, a sudden increase in visitation on the eve of trial would not have erased the father's years of inattention to the child.

Finally, as to counsel's alleged deficiencies in pursuing motions in limine and discovery from the department, the father does not explain what better work in these areas might have accomplished, or how it deprived him of "an otherwise available, substantial ground of defence." Saferian, 366 Mass. at 96. In short, the father has not carried his burden of proving ineffective assistance of counsel.

3. Appeal of the single justice's order. The father also appeals from the denial by a single justice of this court of his motion for a stay of appellate proceedings to return to the trial court to seek relief from judgment under Mass. R. Civ. P. 60 (b), based on his claim of ineffective assistance. The single justice, quoting Adoption of Ulrich, 94 Mass. App. Ct. at 675, concluded that the father failed to demonstrate "a sufficiently strong likelihood of success on the merits to justify the resulting delay in completion of appellate review." We recognize that the "preferred approach" for raising such claims "is for the party claiming ineffective assistance to move

10

to stay the appeal in order to allow prosecution of a motion for new trial in the trial court." Id. at 673. However, "[a]llowance of a motion to stay is not automatic." Id. We review the single justice's decision for a clear error of law or abuse of discretion. See id. at 674.

Because the father's issues with trial counsel's performance largely "involve tactical decisions by his attorney that were not manifestly unreasonable," Adoption of Rhona, 63 Mass. App. Ct. 117, 130 (2005), and because, in any event, he "has failed to demonstrate any prejudice based on the overwhelming proof of the father's unfitness," Care & Protection of Georgette, 439 Mass. 28, 34 (2003), we "discern no error of law or abuse of discretion by the single justice to the extent she determined that the [father's] claim of ineffective assistance showed an inadequate prospect for success to justify a stay of appellate proceedings to allow [him] to pursue it." Adoption of Ulrich, 94 Mass. App. Ct. at 674.

Conclusion. The decree entered in the Juvenile Court is

11

affirmed. The order of the single justice denying the motion for a stay of appeal is also affirmed.

<u>So ordered</u>.

By the Court (Massing, Hand & Allen, JJ.[5]),

Clerk

Entered: December 2, 2025.

---

[5] The panelists are listed in order of seniority.

12