NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1380

ADOPTION OF DAJON.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The Department of Children and Families (DCF) filed a petition to terminate the parental rights of the mother to her child, Dajon.  Following a trial, a Juvenile Court judge found the mother unfit to parent Dajon, terminated her parental rights, and concluded that adoption by the maternal great aunt would be in the child's best interests.  On appeal, the mother does not challenge the court's determination of her parental unfitness or the termination of her parental rights.  Rather, the mother claims that the judge abused her discretion by failing to adequately consider the mother's proposed plan for guardianship by the maternal grandmother.  We affirm.

_____

    [1] A pseudonym.

Background.  We summarize the trial judge's findings of fact.[2]  The child was born in 2014, and she was nine years old at the time of trial.  The child's paternity is unestablished and not relevant to this appeal.  The child's maternal grandmother (grandmother) and great aunt (aunt) were proposed as guardians in competing permanency plans, and each has been heavily involved in the child's upbringing thus far.[3]

Throughout the child's life, the mother consistently struggled with substance use, mental illness, and housing instability.  In 2015, the aunt took custody of the child after she was removed from her mother's care.  Five months later, the grandmother took custody of the child.  The grandmother maintained legal guardianship and physical custody of the child for roughly seven years, until April of 2022.

During the grandmother's guardianship, she struggled to maintain a stable, safe environment for the child.  She experienced a combination of housing instability, substance use for which she refused treatment, and domestic violence.  As a result, the aunt filed a petition for guardianship of the child.

---

[2] The parties are not challenging the judge's findings of fact as erroneous.  The findings "demonstrate that close attention has been given the evidence."  Custody of Eleanor, 414 Mass. 795, 799 (1993).

[3] The grandmother and the great aunt are sisters.

In April 2022, following receipt of a report pursuant to G. L. c. 119, § 51A (51A report), DCF conducted an investigation that revealed that the grandmother had gone to Dajon's school and demanded that Dajon be dismissed early "because she could, because she had custody." The aunt testified that from January to April 2022, she did not allow the grandmother to live in her house because of the grandmother's substance abuse. Consequently, the grandmother had not actually seen the child for months, despite still having legal guardianship of her. During this time, the aunt cared for Dajon while the grandmother struggled to maintain stable housing. DCF filed this care and protection petition on April 12, 2022, and was granted emergency temporary custody. The grandmother was removed as the child's legal guardian in July 2022.

The child has been living with the aunt exclusively since January 2022. The child is happy, healthy, and thriving under the aunt's care. She has many friends, plays sports and the flute, does well in school, and wants to start gymnastics. The child needed dental surgery to fill six cavities that had been neglected while she was in the grandmother's care but is now up to date on her medical visits and dental care. The aunt works full time as a nurse and is financially stable. The aunt and the child reside together in a three-bedroom apartment, along with the aunt's twenty year old son. The child has her own room

in the apartment.  DCF has approved the aunt as an adoptive placement for the child, and the child wishes to be adopted by her aunt.

The grandmother sought to be reinstated as the child's guardian, and she filed a private petition for guardianship that was joined and heard with this care and protection petition. The mother also desired that the grandmother be reappointed as Dajon's guardian.

At trial, the judge found the mother unfit to parent Dajon and terminated her parental rights.  The judge also found that DCF's adoption plan -- that Dajon be adopted by the aunt -- served Dajon's best interests.  The judge dismissed the grandmother's private petition for guardianship.

On appeal, the mother does not contest her unfitness or the termination of her parental rights.  Rather, the mother argues that the trial judge committed clear error by failing to properly consider the grandmother's petition for guardianship.[4] The grandmother has not appealed the dismissal of her private guardianship petition or the order striking her from the care and protection petition and is not a party to this appeal.

_____

[4] As explained below, the correct standard of review for this decision is whether the judge abused her discretion.

4

Discussion. 1. Standard of review. After a determination of parental unfitness and termination of parental rights, the judge is required to assess all placement plans for the children and "determine which placement will serve the best interests of the child." Adoption of Dora, 52 Mass. App. Ct. 472, 474-475 (2001). The judge's assessment of each plan must be "even handed," regardless of which party offered the plan. See Adoption of Hugo, 428 Mass. 219, 226 n.8 (1998), cert. denied sub nom. Hugo P. v. George P., 526 U.S. 1034 (1999). "A judge should consider the wishes of the child in making custodial determinations, and those wishes 'are entitled to weight in custody proceedings.'" Care and Protection of Vick, 89 Mass. App. Ct. 704, 710 (2016), quoting Care & Protection of Georgette, 439 Mass. 28, 36 (2003). However, the child's wishes, while important, are not outcome determinative. See Adoption of Rhona, 63 Mass. App. Ct. 117, 126 (2005).

"In choosing among placement plans, it falls to the sound discretion of the trial judge to determine what is in the best interests of the child, and our review on appeal is one of 'substantial deference.'" Adoption of Bianca, 91 Mass. App. Ct. 428, 434 (2017), quoting Adoption of Hugo, 428 Mass. at 225. We determine whether "the trial judge abused [her] discretion." Adoption of Hugo, supra. "[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge

5

made 'a clear error of judgment in weighing' the factors relevant to the decision such that the decision falls outside the range of reasonable alternatives" (citation omitted).  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

2.  Placement plans.  The mother argues that the trial judge failed to adequately evaluate her preferred placement plan for the child.  She takes issue with the evidentiary support for the judge's findings and specifically argues that the judge erroneously found that the child would suffer psychological harm if removed from the aunt's care.  She also claims that the judge failed to make adequate findings to support the choice she made. DCF counters that the judge properly considered both placement plans, made sufficient findings on relevant factors that were supported by the evidence, and appropriately chose adoption by the aunt because that was, in fact, in the child's best interests.  The child's position is substantially similar to DCF's.[5]

---

[5] Dajon also argues that the grandmother is an indispensable party to the mother's appeal, and, therefore, because the grandmother has not appealed the dismissal of her guardianship petition or joined the mother's appeal, the mother's appeal should be dismissed.  See Guardianship of Wilson, 496 Mass. 60, 61 (2025).  This issue does not appear to be jurisdictional. See Guardianship of Tara, 97 Mass. App. Ct. 11, 13-14 (2020) (recognizing there are circumstances in which Appeals Court has reached issues in which court can order no effective relief). In any event, because we find that the judge's ruling was sufficiently supported by the evidence, we decline to address the mother's standing to appeal under Guardianship of Wilson.

We conclude that the trial judge did not abuse her discretion by choosing the placement plan advanced by DCF and the child. She gave the mother's plan adequate consideration. Most significant, the judge found "that awarding guardianship of [the child] to Maternal Grandmother is [not] in [the child's] best interests. Maternal Grandmother lacks stability in her home life and her sobriety that render her an unsuitable guardian for [the child]." As described below, the factual conclusions in the second quoted sentence are adequately supported. Given the judge's supported conclusion about the maternal grandmother's suitability, no further evaluation of the plan for her guardianship was required.

Beyond that, the grandmother filed a guardianship petition but did not propose a guardianship plan or outline how she planned to care for the child. Thus, the only information the judge could consider in connection with that petition was testimony from the mother, the aunt, and the grandmother, and evidence of the grandmother's past conduct. During trial, the grandmother testified that she intended to rent the child a separate room in the multi-bedroom home she was living in with a man she had met through work. The grandmother did not offer any evidence regarding how her housing situation might affect the child's school placement or any plans for childcare during the summers and weekends. DCF's plan, on the other hand, was

7

detailed, clear, and supported by the fact that the child had thrived during the years she lived with the aunt. The judge properly evaluated the plans based on the information she had in front of her. See Adoption of Helga, 97 Mass. App. Ct. 521, 529 (2020).

Second, the judge's ultimate determination was sufficiently supported by the evidence and the judge's findings. The judge properly considered the grandmother's history of housing instability, substance use for which she refused treatment, and domestic violence, in determining the best interests of the child. The judge also considered the fact that the aunt had been Dajon's caretaker for the previous two years, that Dajon had thrived in her care, and that Dajon had expressed a desire to be adopted by her aunt. The judge's findings of fact and conclusions of law were consistent with the record evidence. Her finding that the child would suffer psychological harm if separated from the aunt was supported by the fact that the aunt has been the child's most stable parental figure. The judge was not required to describe the specific nature of the bond between the child and the aunt or explain why serious harm would flow from the severance of that bond where it was not the decisive factor in the judge's decision. See Adoption of Katharine, 42 Mass. App. Ct. 25, 30-31 (1997) (holding that in termination case, judge is only required to make specific findings about

8

cause and nature of psychological harm that will flow from child's removal from substitute caretaker when it is <u>decisive factor</u> in court's decision [emphasis added]).

We find no "clear error of judgment" in the judge's weighing of the relevant factors here, and her determination that the DCF adoption plan was in [Dajon's] best interests was not "outside the range of reasonable alternatives."  See <u>L.L.</u>, 470 Mass. at 185 n.27.  Because we discern no abuse of discretion and conclude that the judge's evaluation of the competing plan was adequate and that the judge's decision is supported by the evidence, we affirm.

<u>Decree affirmed</u>.

By the Court (Rubin,
  Brennan & Wood, JJ.[6]),

Clerk

Entered:  December 29, 2025.

---

[6] The panelists are listed in order of seniority.